No. 89-176

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

IN RE THE MARRIAGE OF
LEAH D. PETERSON,

        Petitioner and Respondent,

   and

NORMAN W. PETERSON,

        Respondent and Appellant.


APPEAL FROM:  District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Henry Loble, Judge presiding.

COUNSEL OF RECORD:

   For Appellant:

      J. Cort Harrington, Jr., Helena, Montana

   For Respondent:

      David N. Hull, Helena, Montana


Submitted on Briefs:  Aug. 3, 1989

Decided:  August 23, 1989

Filed:

_____
          Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the First Judicial District Court, Lewis and Clark County. In this marriage dissolution action, the appellant seeks reversal of the trial court's amended judgment and reinstatement of the original judgment which granted respondent a lesser share in the marital estate. We affirm the trial court's amended judgment.

The issues on appeal are:

1. Did the District Court abuse its discretion by including premarital assets in the marital estate?

2. Did the District Court award more than 100 percent of the marital estate?

Leah Peterson and Norm Peterson met in early 1986. Sometime during the spring of 1986 the parties opened a joint checking account when they became engaged. Norm moved in with Leah in the home she owned. Leah maintained a separate account from which she made payments for this house and paid household bills.

From the time the parties began commingling funds in the joint checking account, both parties deposited their paychecks in the joint account. Norm's monthly income was approximately $2,500 and Leah earned about $1,800 per month. After the parties separated Leah withdrew the $1,735 remaining in the joint account, using the monies to pay joint debts nearly equal to the amount she withdrew.

Prior to their marriage the parties decided to build a home on Cloverview Drive in Helena. Norm made a $500 down payment on the lot. To finance the new home, Leah agreed to sell her home in Helena and Norm agreed to sell a house he owned in Browning, Montana. Leah sold her home, receiving

2

$13,400 in equity from the sale and deposited $12,600 in the couple's joint account. Of this amount, Norm and Leah used $8,000 as a down payment on the Cloverview home. Norm's house in Browning never was sold.

Also prior to marriage, the couple jointly borrowed $4,000 in order to buy their wedding rings, using a boat and boat trailer owned by Norm as collateral. At this time Norm transferred ownership of the trailer from himself to himself and Leah. He also gifted one-half of the boat to Leah.

Norm received $7,000 from his insurance company for coverage of a wrecked Datsun 280ZX, which money was deposited in the couple's joint account prior to marriage. This money was used for various expenses including a $2,000 pre-marriage trip taken by Norm. Some of the insurance money was also used to make payments on cars the couple purchased after they were married, including a 1984 Buick Skylark which Leah received and on which she also makes payments.

In April 1986, also before the marriage the parties traded a 1980 Honda owned by Leah, having a value of $1,500 for a 1986 Toyota 4 Runner. With the trade the balance owing on the Toyota was $15,000. Norm received the Toyota and continues to make payments on it. Prior to the trade, Leah paid $1,800 to rebuild the motor of the Honda.

On October 3, 1986, Norm and Leah were married in Las Vegas, Nevada.

The troubled marriage was short-lived and the couple separated in January, 1987. Leah filed a petition for Declaration of Invalidity on March 11, 1987, alleging that she had been induced into the marriage by Norm's fraudulent promises that the parties would share equally in financial contributions to the marriage, he would control his drinking and seek counseling for his temper, and he would sell his

3

house in Browning. In response Norm affirmatively alleged that he too was fraudulently induced to marry because he did not know of the number, nature and extent of Leah's financial obligations prior to the marriage and that Leah failed to tell him one of her daughters from a former marriage would be living with them. Norm also asked for an annulment, stating that had Leah disclosed the above-listed information to him he would not have married her. In a later pleading Norm requested that the trial court grant an annulment or, in the alternative, a dissolution.

After the parties separated, the Cloverview home sold with the parties receiving a net of $2,236, all of which was kept by Leah. Norm also paid Leah an additional $3,000 in recognition of the fact that down payment for the Cloverview home came from the proceeds of the sale of her home. Since Norm's Browning property never sold, Leah's contribution to the Cloverview home was disproportionate.

The boat and trailer, half of which was now owned by Leah, was sold after the parties separated. Of the $6,000 price received, $5,400 remained after a sales commission was deducted. Norm used $4,300 of the proceeds to pay off the loan remaining on the rings and other joint debts.

The annulment/dissolution was originally heard on December 7, 1987. From this trial the District Court judge found it impossible to make a decision because of the manner in which evidence was presented. By stipulation, the case then went before a special master, pursuant to Rule 53, M.R.Civ.P.

The special master apportioned the assets and debts of the parties and held that a dissolution rather than an annulment was proper. The special master found Leah's assets, prior to commingling consisting of her home, the 1980

4

Honda with new motor, a diamond which went into Norm's wedding ring, and personal property, to have a value of $18,450. Norm's assets prior to commingling, including money from insurance, boat and trailer, and various business and real property interests, were valued at $177,950.

The marital estate value was placed at $14,191. Included in the martial estate were:

| | | |
|---|---|---|
| 1. | the boat and trailer | $5,400.00 |
| 2. | rings (his & hers) | 4,520.00 |
| 3. | proceeds from the couple's Cloverview home | 2,236.00 |
| 4. | cash from joint checking account | 1,735.00 |
| 5. | equity in the Toyota | 300.00 |
| 6. | equity in the Buick | 0.00 |
| | TOTAL: | $14,191.00 |

The estate was then divided as follows:

**To Norm** — Value

| | | |
|---|---|---|
| 1. | Toyota | 300.00 |
| 2. | Rings in possession | 2,100.00 |
| 3. | ½ interest in boat & trailer | 2,700.00 |
| | (less ½ joint debts paid from proceeds of sale of boat & trailer) | (2,150.00) |
| | TOTAL: | $2,950.00 |

**To Leah** — Value

| | | |
|---|---|---|
| 1. | Buick | 0.00 |
| 2. | Cash from joint account | 1,735.00 |
| | (less joint debts paid) | (1,730.00) |
| 3. | Rings in possession | 2,420.00 |
| 4. | ½ interest in boat & trailer (less ½ joint debts paid from proceeds) | (2,150.00) |
| | TOTAL: | $5,211.00 |

In addition to the distribution of the marital assets, the special master decided Norm still owed Leah $550, one-half of the amount remaining from sale of the boat and trailer after payment of joint debts ($5,400-$4,300 = 1100 - ½ = $550). Also, Norm was to pay Leah another $7,664 to

5

compensate her for selling her home to enable the couple to make a down payment on the Cloverview home. The figure was arrived at by taking:

| | |
|---|---|
| the amount Leah received for her home | $13,400 |
| less the amount Leah received on sale of the Cloverview home | (2,236) |
| less additional money Norm gave Leah | (3,000) |
| less the down payment Norm paid on the Cloverview lot | (500) |
| equals the amount needed to replace the home equity Leah "lost" in the marriage = | $7,664 |

The District Court judge adopted most of the report of the special master, with the exception of the finding regarding Norm's payments to Leah of $7,664 for lost equity. In an opinion dated December 7, 1988, the District Court held that such a payment would have the effect of awarding more than 100 percent of the marital estate.

On February 1, 1989, the District Court reassessed its earlier decision and granted Leah's motion for new trial or to alter or amend the December 7 judgment. The effect of the February 1 decision was that the District Court fully adopted the special master's report, ordering Norm to make an additional $7,664 cash payment to Leah. A February 27, 1989 judgment of the District Court ordered Norm to pay Leah $7,664 and $550 for a total judgment of $8,214.

The District Court was persuaded by Leah's argument that the court failed to consider that the cash award was in lieu of her interest in Norm's premarital property. Citing the special master's Finding of Fact No. 12, the District Court pointed out that the special master recognized the need to consider premarital assets if there was to be an equitable distribution:

> In order to value each party's individual property, therefore, it is necessary to consider as nearly as

6

> possible the property owned by each prior to commingling of funds. Similarly, joint assets and obligations were acquired after the engagement but before the actual marriage. Therefore, consideration of assets of the marriage cannot be limited to only assets and obligations actually acquired after the date of marriage. Rather, consideration must be given to all the parties' mutual financial transactions. (Emphasis supplied by the District Court.)

This, according to the District Court, explains how the special master could distribute more money than was found to be in the marital estate. The marital estate included all assets involved in the parties' joint financial transactions from the time commingling began, not merely from the date of marriage.

## I.

Did the District Court abuse its discretion by including premarital assets in the marital estate?

The standard of review for property distribution has been clarified recently in In re Marriage of Hall (Mont. 1987), 740 P.2d 684, 686, 44 St.Rep. 1321, 1323, where we stated:

> We have concluded that in a property distribution review in marriage dissolution, this Court will reverse a district court only on a showing that the district court has acted arbitrarily or has committed a clear abuse of discretion, resulting in either instance in substantial injustice.

Including the premarital assets in the marital estate is not an abuse of discretion, nor does it result in substantial injustice. There is evidence to support inclusion of the premarital assets in order that an equitable

7

distribution be made. Leah sold her only substantial premarital asset, her home, so that the parties could build the Cloverview home. Norm's contribution was to have been his Browning house, but the house never sold. While Leah was given $2,236 in cash proceeds from the sale of the Cloverview home and an additional $3,000 payment from Norm, she has lost the equity she had in her home. Norm, on the other hand, still owns his Browning house.

During their short relationship, Leah did contribute to the maintenance of Norm's Browning property. Money from the joint checking account, to which she contributed, was used to pay taxes and purchase a stove for the Browning property. However brief the interest, these payments evidence Leah's interest in the premarital asset.

Inclusion of premarital assets in the marital estate in the case at bar correlates with our previous holding in In re the Marriage of J.J.C. (Mont. 1987), 739 P.2d 465, 44 St.Rep. 1068, where we held it was proper to award a cash payment to the wife rather than force the division of property in which the wife had only a brief interest. In J.J.C, as in the instant case, the marriage lasted only a few months and the wife's financial contributions to property were minimal. While finding that the wife made no contribution to the acquisition or preservation of the husband's estate, this Court held a $15,000 payment to the wife was nonetheless proper to compensate her for her interest obtained in the husband's property through their marriage.

It should be noted that a decision requiring payment by one party to the other in a dissolution proceeding also finds support in statutory law. Section 40-4-202(1), MCA, states that a court may "finally equitably apportion between the parties the property and assets belonging to either or both,

8

however and whenever acquired and whether the title thereto is in the name of the husband or wife or both."

The statute goes on to list factors which the court must consider in making the property distribution. The record clearly shows that the special master considered these factors in making his findings and that the District Court adopted the master's report in toto in its February, 1989 decision.

We hold the District Court properly included premarital assets in the marital estate.

## II.

Did the District Court award more than 100 percent of the marital estate?

Norm argues that by ordering him to pay an additional $7,664 to Leah the District Court is distributing more assets than the marital estate contains. In support of this argument he cites In re the Marriage of Lippert (Mont. 1981), 627 P.2d 1206, 38 St.Rep. 625, which expressly prohibited a district court from awarding more than 100 percent of the marital estate.

Lippert is a correct statement of the law. A court cannot distribute what is not there. The District Court, however, explained its reasoning in ordering the additional payment. In the above-cited portion of the February 1 decision, quoting special master's Finding of Fact No. 12, the District Court agreed that the marital estate included assets acquired prior to the date of marriage. Noting that the special master's report was confusing in regard to what was in the marital estate, the District Court recognized that the special master intended to include premarital assets. By including premarital assets, the marital estate is adequate

9

to provide the additional payment from Norm to Leah in compensation for the loss she suffered by selling her home in order to contribute to the couple's Cloverview home.

The couple's premarital assets were properly included in the marital estate and we find that the District Court did not distribute more than 100 percent of the marital estate.

Affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

10