JUSTICE TRIEWEILER
delivered the Opinion of the Court.
Appellant Rick A. Maedje petitioned the District Court for the Fourth Judicial District in Missoula County to dissolve his marriage to Kim A. Maedje. A trial was conducted by a Special Master in December 1991, and a decree of dissolution was entered by the District Court on June 25, 1992. The court distributed the marital estate based on the Special Master’s recommended findings of fact and conclusions of law. Rick’s motion to amend the decree was deemed denied pursuant to Rule 59(g), M.R.Civ.P. From the decree and denial of his motion to amend, Rick appeals.
We affirm in part and reverse in part.
The issues on appeal are restated as follows:
*264 1. Were the court’s findings regarding the increase in value of the Inyokern property during the parties’ marriage clearly erroneous?
2. Did the court err in its distribution of the marital estate?
Rick and Kim Maedje were married on June 8,1989, in Salt Lake City, Utah. A petition for dissolution was filed by Rick on April 30, 1991. At the time of trial, Rick was 52 years old and was employed as a pilot for Sky West Airlines. He had worked as a commercial pilot for over 20 years. Kim was 34 years old at the time of trial and had previously worked as a horse trainer and grocery store checker. No children were born during the parties’ 22 month marriage.
Both Rick and Kim had previously been married and each brought substantial real and personal property into the marriage. Among those assets were Rick’s properties located in Tehachapi and Inyokern, California, and Kim’s interest in property located in Caliente, California. Prior to their marriage, Rick and Kim resided together at Tehachapi and then lived at Inyokern during part of 1989 and 1990, where Kim conducted a horse training and boarding business.
During their marriage, the parties sold the Tehachapi, Inyokern, and Caliente properties, and purchased two pieces of property in Montana: 28 acres located on Nine Mile Road near Huson, and the Blue Bird Mobile Home Park in Hamilton. The Nine Mile property was purchased with proceeds from the sale of the Inyokern property in March 1990. In April 1991, just prior to their separation, the Hamilton property was purchased with proceeds from the sale of the Tehachapi property and a loan secured by the Nine Mile property.
At trial, a Special Master for the District Court valued the marital estate based primarily on testimony from the parties and their experts. After adopting the Special Master’s recommended findings of fact and conclusions of law, the District Court apportioned the marital estate and entered a decree of dissolution on June 25, 1992. The court awarded Kim the tangible personal property she brought into the marriage and the proceeds from the sale of the Caliente property. Rick was awarded his premarital personal property, two undeveloped parcels of real property, and his retirement account and shares of Sky West stock. These property distributions are not challenged on appeal.
At issue in this appeal are the court’s valuation of the appreciation of the Inyokern property during the parties’ marriage, and its allocation of the increased value realized from the sale of both the Inyokern and Tehachapi properties.
*265 The court found that the value of the Inyokern property as of the date of the parties’ marriage was $96,000 and that it was sold ten months later for $125,000. Therefore, the court concluded that the property had increased in value by approximately $29,000 during the time the parties were married. The court also found that the Tehachapi property was appraised in November 1988 at $171,000 and sold in February 1991 for $250,000. The court determined that this represented an increase in value of approximately $3000 per month, and concluded that the property increased in value by $58,000 from the date of the marriage to the date the property was sold. The court specifically found the following with respect to these increases in value:
Although there was considerable testimony submitted that Kim is and has been a hard worker during the marriage, it is highly probable that neither Kim nor Rick’s improvements to property may have significantly contributed to the increase in value during the course of the marriage. Rather, it appears that the increase was primarily attributable to appreciation.
The court concluded that the parties should share equally in the increased value in these two properties and determined that an equitable division of property would be to award Kim the Nine Mile property, valued at $55,000, free of all encumbrances. The court stated that this reflected “her contributions to the marriage and her portion of the increase in value of both Tehachapi and Inyokern during the course of the marriage.” Rick was awarded the Hamilton mobile home park and was ordered to pay the mortgage on the Nine Mile property which secured the outstanding loan on the Hamilton property.
Rick moved to alter or amend the judgment, but this motion was deemed denied on September 9,1992. From the decree and the denial of the motion to amend, Rick appeals.
STANDARD OF REVIEW
The distribution of the marital estate is governed by § 40-4-202, MCA. This statute vests the district court with broad discretion to apportion the marital estate in a manner which is equitable to each party under the circumstances. In re Marriage of Rock (1993), 257 Mont. 476, 850 P.2d 296; In re Marriage of Collett (1981), 190 Mont. 500, 621 P.2d 1093.
The standard of review employed by this Court in marital property division cases is whether the district court’s findings of fact *266 are clearly erroneous. In re Marriage of McLean / Fleury (1993), 257 Mont. 55, 849 P.2d 1012. When there is substantial credible evidence to support the court’s findings and judgment, this Court will not alter the trial court’s decision unless there is an abuse of discretion. In re Marriage of Scoffield (1993), 258 Mont. 337, 852 P.2d 664.
I.
Were the court’s findings regarding the increase in value of the Inyokern property during the parties’ marriage clearly erroneous?
Rick contends that the court’s findings in regard to the appreciation of the Inyokern property during the time that the parties were married is clearly erroneous. Therefore, he asserts that the property distribution scheme, which is based in part on the Inyokern property’s appreciation, is inequitable.
Rick does not challenge the court’s methodology for calculating the appreciation of premarital property during the parties’ marriage. However, he contends that the figures used by the court to calculate the appreciation of the Inyokern property were purely speculative and are not supported by substantial credible evidence.
We agree with this contention. The District Court’s findings of fact numbered 23 and 24 address the valuation of the Inyokern property. Those findings state as follows:
23. Petitioner testified that he believed Inyokern’s value as of June 1989 was $103,000. Respondent testified that Petitioner told her the property was worth between $85,000-$90,000 as of June 1989.
24. Averaging the values given by the parties, the Special Master recommends that the value as of date of marriage be established at $96,000. Thus the increase in the value of this property from the date of marriage to the date of sale is approximately $29,000.
After reviewing the record, we conclude that there was no factual basis in the record for these findings. When Rick testified, he stated that he did not know the value of the Inyokern property in June 1989, but that he had sold ten acres of it for $105,000 in 1983. There is no indication what relationship that ten acres had to the 19.2 acres of Inyokern property which Rick brought into the marriage in June 1989. Although it is unclear whether a portion of Inyokern was actually sold or whether this was a lease option which ultimately fell through, there is no evidence that Rick stated that Inyokern was worth $103,000 in 1989.
*267 Furthermore, when Kim was asked about the value of the Inyokern property in 1989, she gave the following answers to the following questions during the course of her testimony:
Q. (BY MR. LEITCH) Moving along here, Kim, regarding the Inyokern property, you state in the [proposed] Findings that in June of‘89 it was valued at $85,000. Where did that figure come from?
A. That figure I had gotten from — and I think it is more of a guesstimation on the price that Rick wanted to sell it to the Hackers for. They lived right next door to us. And originally I had always heard —
MR. NEWCOMER: Objection, speculation.
THE COURT: Sustained.
Q. Okay. But you said that it was valued at $90,000 by Rick, not $85,000?
A. Well, it was speculation on our part. We thought 85 to 90 and that’s how I feel about it. It is hard when you are not real estate agents, and we are not even talking about an appraisal here. We are talking about two people talking.
MR. NEWCOMER: Your Honor, I would object to this line of questioning as simply eliciting speculation as to value.
In other words, in order to arrive at the value of the Inyokern property at the time the parties were married so that it could determine the amount by which the property appreciated during the marriage, the court averaged a figure which it erroneously attributed to the testimony of Rick with a figure thrown out by Kim based on total speculation. The result was an average of $96,000, which has no factual basis in the record.
In In re Marriage of Luisi (1988), 232 Mont. 243, 756 P.2d 456, we stated that, when valuing the assets in a marital estate, the court is free to adopt any valuation of property which is supported by the record. However, in this instance the court’s findings are based largely on speculation, and we have made clear that speculation, conjecture, inference, or guess do not constitute credible factual evidence. Graham v. Rolandson (1967), 150 Mont. 270, 435 P.2d 263.
We conclude that the court’s findings were not supported by substantial credible evidence, and therefore, its calculation of the appreciation of the Inyokern property during the parties’ marriage was clearly erroneous. The judgment of the District Court with respect to *268 the valuation of the Inyokern property is vacated and we remand this case to the District Court for a proper determination of the amount by which the Inyokern property appreciated during the parties’ marriage.
II.
Did the court err in its distribution of the marital estate?
Rick contends that the court erroneously awarded Kim the Nine Mile property as compensation for her share of the appreciation of Inyokern and Tehachapi because she did not contribute significantly to the appreciation of those pre-acquired properties which Rick brought into the marriage. He asserts that even if Kim did contribute to the value of Tehachapi, the court’s award ofhalf of the appreciation of both properties was disproportionate to the value of her contributions. Finally, he claims that the court should not have ordered him to pay the mortgage on the Nine Mile property because Kim testified that she would be willing to pay it if she were awarded the property.
Section 40-4-202(1), MCA, sets forth the factors which must be considered by the court before distributing property acquired before the marriage. That section provides in relevant part that:
In dividing property acquired prior to the marriage ... the court shall consider those contributions of the other spouse to the marriage, including:
(a) the nonmonetary contribution of a homemaker;
(b) the extent to which such contributions have facilitated the maintenance of this property; and
(c) whether or not the property division serves as an alternative to maintenance arrangements.
In this instance, the record demonstrates that the court considered Kim’s contributions to the marriage, including specific contributions she made to the properties in question. Based on testimony by the parties and other witnesses, the court found that Kim had made substantial nonmonetary contributions to the marriage. There was testimony that, among other things, Kim had remodeled and painted buildings on the parties’ various properties, performed daily housekeeping activities, and kept the marital financial records. Furthermore, although a request for maintenance was made in the response to the petition for dissolution, no maintenance was awarded. Although the court found that the increase in the value of the Inyokern and Tehachapi properties “was primarily attributable to apprecia *269 tion,” it concluded that due to her contributions to the marriage, she was entitled to half of the appreciation in value of those properties.
Although the evidence does not indicate that Kim’s contributions resulted in any significant increase in the value of the properties in question, the record does support the finding that Kim contributed in some fashion to the maintenance and appreciation of these properties. We conclude that this evidence supports the District Court’s allocation of these assets according to the considerations required by § 40-4-202, MCA.
Therefore, we hold that the court did not abuse its discretion when it awarded Kim half of the appreciated value of the Inyokern and Tehachapi properties. Although Kim had stated that she would pay the mortgage on the Nine Mile property, it was within the court’s discretion to award her this property unencumbered as compensation for her share of the marital estate.
This case is reversed in part and remanded for a proper determination of the amount by which the Inyokern property appreciated during the parties’ marriage. The distribution of the marital estate is affirmed subject to any adjustments necessary to reflect the corrected value of appreciation on the Inyokern property.
JUSTICES HARRISON, HUNT and WEBER concur.