NO.   94-417

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN RE THE MARRIAGE OF

JANET MARIE HULETT,

     Petitioner and Respondent,

  and

JAMES P. HULETT,

     Respondent and Appellant.

FILED

MAY 23 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Twelfth Judicial District,
In and for the County of Hill,
The Honorable John Warner, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

       Patricia Jensen, Attorney at Law,
Bozeman, Montana

     For Respondent:

       Keith A. Maristuen, Bosch, Kuhr, Dugdale,
Martin & Kaze, Havre, Montana

Submitted on Briefs:  March 23, 1995

Decided:  May 23, 1995

Filed:

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellant James P. Hulett appeals the final decree of dissolution and order issued by the Twelfth Judicial District court, Hill County. We affirm.

The following issues are raised on appeal:

1. Did the District Court abuse its discretion when it divided the parties' property?

2. Did the District Court abuse its discretion when it determined the amount of child support due from James?

3. Did the District Court err when it awarded joint custody but did not establish a specific visitation schedule?

4. Did the district Court err when it awarded temporary maintenance to Janet?

The parties were married on March 22, 1975, in Havre. Respondent Janet Marie Hulett filed her petition for dissolution on November 3, 1993. Final judgment on the decree of dissolution was entered June 27, 1994. At the time of trial, two of the parties' three children, Lisa (16) and Christopher (12), were minors. Patrick (18) also lived with Janet.

James's shift at Burlington Northern Railroad in Havre is from 11 p.m. to 7 a.m. However, this shift is not permanent, nor does the location of his job appear to be permanent. The record indicates that he spent most of 1993 working in Great Falls while the rest of the family stayed in Havre. His annual salary varies from $29,000 to $37,000, depending on what job he does and the

amount of overtime he works.  Janet works as a bookkeeper in Havre and makes $15,000 annually.

At trial, both parties submitted various exhibits and gave testimony.  The District Court spoke with both minor children. James appeals several awards and allocations set out in the District Court's final decree.

Relevant facts concerning each issue will be discussed below.

ISSUE 1--PROPERTY DIVISION

Did the District Court abuse its discretion when it divided the parties' property?

The appropriate standard of review is whether or not the district court's findings are clearly erroneous. In re Marriage of Maedje (1994), 263 Mont. 262, 265-66, 868 P.2d 580, 583 (citing In re Marriage of McLean/Fleury (1993), 257 Mont. 55, 849 P.2d 1012).

There was an exhaustive list of the parties' property containing 213 items, with a detailed breakdown of their values in the final decree.  This list specified which party received which item of property.

A.    Retirement Accounts:   Janet's retirement account, totalling $2363 at the time of trial, was awarded to her by the District Court.   The parties had three IRA accounts totalling $13,697.  Janet was awarded $8233 from those accounts.  James has a retirement account with BN.  According to a letter he received from the Railroad Retirement Board, Janet, as a divorced spouse, is statutorily entitled to a portion of James's BN retirement account.

3

James argues that the District Court erred in its division of the three IRA accounts and the parties' retirement accounts.

B. <u>Marital property:</u>  James disagrees with the award to Janet of three items of marital property valued at $65.  James's argument seems to be based on Janet's proposed findings in which those particular three items were distributed to him.  He states that the District Court's award of the $65 of personal property to Janet contradicts evidence.  He also states that in awarding her those personal property items the District Court granted relief to Janet that she did not request.

C. <u>Nonmarital property:</u>  Five items of personal property that James classifies as nonmarital property were awarded to Janet. He claims that these items were acquired by gift or inheritance, or were owned by him prior to the marriage.  The items include a buffet/hutch ($125), a washer-dryer pair ($150), a forge ($15), one-half of a silver dollar collection (value not listed), and a shelf ($5). Testimony was received that the buffet/hutch was given to James by a neighbor.  Patrick, the parties' oldest so*, refurbished the buffet/hutch and gave it to Janet as a Christmas gift.  James received the washer/dryer set from his mother.  It had belonged to his deceased father.  The silver dollars were found in the family home when the parties moved in at the beginning of their marriage.  The home had previously belonged to James's grandmother. There was no testimony given about the origins of the forge and the shelf.

4

Also, there was a recently established $17,000 joint savings account in Janet's and her father's names. The account contained the proceeds from the sale of her father's home. Testimony indicated that the money in the account was her father's and that he controlled the account. Janet also testified that she paid income tax on the interest from that account. James claims that he paid income tax on the account via a joint tax return with Janet and contributed to the maintenance of the account thus creating an interest in it.

D. <u>Family residence:</u> At trial, the parties stipulated to a $43,000 value for the family home. The home **was** appraised for $47,000, and a market valuation report set its value at $43,000. The District Court valued it at $46,000. Evidence was presented concerning items on the property list that would accompany the family home (i.e., pool table, shed, statue, and fire extinguisher) and a $1500 savings account that was specifically for the purpose of fixing the roof. Those items and the savings account do not appear to be a part of the stipulated value of $43,000. James receives the home as of September 1, 1995. He also receives the four items listed above, and the $1500 savings account. The District Court ordered him to purchase Janet's portion of equity in the home for $23,000 sometime prior to his possession on September 1, 1995. James argues that the court granted relief not requested, that it did not provide supporting reasons for the valuation of the home, and did not indicate that it took into consideration James's contributions to the equity in the home.

5

E.   Debt allocation:  James was allocated a Visa credit card debt of approximately $775 that Janet stated she would assume. James again asserts that a court may not grant relief not requested.

The district court has broad discretion in its determination and apportionment of the marital estate.  The apportionment should be equitable under the surrounding circumstances.  In re Marriage of Zander (1993), 262 Mont. 215, 221, 864 P.2d 1225, 1229 (citing In re Marriage of Rock (1993), 257 Mont. 476, 850 P.2d 296). If there is substantial credible evidence to support the findings, we will not disturb a district court's ruling without a showing that the district court abused its discretion.  Maedje 868 P.2d at 583 (citing In re Marriage of Scoffield (1993), 258 Mont. 337, 852 P.2d 664).   There is substantial credible evidence to support the District Court's decision.  We hold that the District Court did not abuse its discretion.

ISSUE 2--CHILD SUPPORT

Did the District court abuse its discretion when it established the amount of child support due from James?

The standard of review that we employ in reviewing child support is whether or not the district court abused its discretion in its determination of child support.   In re Marriage of D.F.D. and D.G.D. (1993), 261 Mont. 186, 203, 862 P.2d 368, 378 (citing In re Marriage of Nash (1992), 254 Mont. 231, 235, 836 P.2d 598, 601).

James's income was $31,097 for 1993 and $37,096 in 1992. He estimated his 1994 income to be $29,341, based on his earnings from

6

January through April 1994. James's child support calculations, attributing an income of $29,341 to himself, resulted in the amount of $188 per month per child. Janet's child support calculations, attributing an income of $31,155 to James, resulted in $213 per month per child. The District Court ordered James to pay $210 per month per minor child. James argues that the District Court did not make specific findings to explain how it arrived at the award of $210 per month per child. While the District Court should have made a specific finding as to how it arrived at its support figure, we cannot say from this record that the District Court abused its discretion in its award of $210 per month per child in child support payments, given James's earning record.

The district court has discretion in setting child support payments and in the absence of an abuse of that discretion, we will not reverse its decision. Marriage of D.F.D. and D.G.D., 862 P.2d at 378. We hold that the District Court did not abuse its discretion in determining the child support amount.

### ISSUE 3--CUSTODY

Did the District Court err when it awarded joint custody but did not establish a specific visitation schedule?

The applicable standard of review of custody and visitation is whether or not there is substantial credible evidence to support the district court's decision. Romo v. Hicock (Mont. 1994), 871 P.2d 894, 896, 51 St. Rep. 320, 321 (citing Nash, 836 P.2d at 600).

The parties seek joint custody of the two minor children, and James wants 50 percent of the physical custody of Christopher.

7

Christopher agreed that he wanted to spend time with his father, but appeared quite distressed about spending nights alone in the house while James works the 11 p.m. to 7 a.m. shift. The District Court awarded the parties joint custody, and stated that " [t]he parties shall have shared [physical] custody of Christopher so that he may spend his time as equally as practical with both parents." James argues that a specific visitation schedule insuring 50 percent physical custody of Christopher should have been issued by the District Court due to the parties' inability to communicate.

There is substantial credible evidence to support the District Court's decision. We hold that the District Court did not abuse its discretion in awarding joint custody without a specific visitation schedule.

### ISSUE 4--MAINTENANCE

Did the District Court err when it awarded temporary maintenance to Janet?

Our standard of review for maintenance awards is whether or not the district court's findings are clearly erroneous. Marriage of D.F.D. and D.G.D., 862 P.2d at 377 (citing In re Marriage of Eschenbacher (1992), 253 Mont. 139, 142, 831 P.2d 1353, 1355).

The District Court awarded temporary maintenance to Janet in the form of ordering James to pay insurance and property taxes on the family home, and ordering him to be responsible for repairing the roof and any other necessary major repairs on the family home through August 31, 1995. Janet and the children will live in the

home through August 1995. James will take possession of the home on September I, 1995.

We hold that the District Court's decision to award temporary maintenance is not clearly erroneous.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1988 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to Montana Law Week, State Reporter and West Publishing Company.

_____
                Justice

We concur:

_____
    Chief Justice

_____

_____

_____
      Justices

May 23, 1995

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Patricia Jensen
Attorney at Law
1822 W. Lincoln, Ste. B
Bozeman, MT 59715

Keith A. Maristuen
BOSCH, KUHR, DUGDALE, MARTIN & KAZE
Box 7152
Havre MT 59501-7152

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy