NO.   95-362

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

IN RE MARRIAGE OF

MARTHA A. HOGSTAD,

     Petitioner and Respondent,

  and

DENNIS HOGSTAD,

     Respondent and Appellant.



FILED

APR 0 5 1996

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Sixth Judicial District,
               In and for the County of Park,
               The Honorable Richard G. Phillips, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Brenda R. Cole, Swandal, Douglass,
          Frazier & Cole, Livingston, Montana

     For Respondent:

          Rienne McElyea, Berg, Lilly, Andriolo
          & Tollefsen, Bozeman, Montana

Submitted on Briefs:   February 8, 1996

Decided:   April 5, 1996

Filed:

Clerk

Justice Charles E. Erdmann delivered the opinion of the Court.

Dennis Hogstad and Martha Hogstad were divorced in October 1994. Dennis appeals from the findings of fact, conclusions of law, and decree of dissolution entered by the Sixth Judicial District Court, Park County. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

We restate the issues on appeal as follows:

1. Did the District Court err in designating Martha the primary custodial parent for Matthew, the parties' minor child?

2. Did the District Court err in dividing the marital property?

3. Did the District Court err in determining child support?

4. Did the District Court err in establishing a visitation schedule for Matthew?

FACTS

Dennis and Martha were married on May 31, 1986, in Livingston. Matthew Hogstad, who is currently eight years old, is the only child born of the marriage. Martha has a thirteen-year-old daughter, Laura, from a previous marriage.

The parties resided in Livingston during the course of their marriage. Martha was employed as the office manager for Brand-S Corporation until the plant closed its Livingston operation in May 1994. Dennis worked as a carpenter for the National Park Service in Yellowstone National Park from approximately April to October of each year. During the winter months Dennis worked locally for a Livingston contractor.

Martha and Dennis separated in September 1993 and on September 17, 1993, Martha filed a petition for dissolution. When Martha's employment in Livingston ceased she disclosed her intent to relocate to Oregon with Matthew. Martha sought physical custody of Matthew for the school year with Dennis having summer visitation. Dennis sought just the opposite--he requested custody of Matthew for the school year with Martha receiving summer visitation.

The parties agreed that a custodial evaluation for Matthew should be performed and they stipulated that Dr. Chuck Kelly and Suzy Saltiel would jointly perform the evaluation. The evaluators determined that Martha had been Matthew's primary caretaker. They were aware of Martha's intent to move to Oregon with Matthew, but nonetheless concluded that Martha should remain the primary custodial parent. The evaluators recommended that Martha have physical custody of Matthew during the school year with Dennis having visitation during summer months and on alternating holidays.

In addition to the issues of Matthew's custody, support, and visitation, the parties each claimed certain premarital property interests. Martha owned the couple's residence prior to the marriage and she and Dennis both agreed that she should receive her premarital equity in the home as part of the distribution of marital assets.

Prior to the marriage, Dennis and a friend jointly owned property and a cabin in the Crazy Mountains. The original purchase price was $16,000 and Dennis's contribution was $8,000. During the

3

marriage, Dennis and his friend divided the property. Dennis received approximately half the property and $6,000 in lieu of his friend keeping the cabin. Dennis deposited $5,200 from that transaction into the parties' Franklin Money Market account and when the property was divided Dennis and Martha filed a joint tenancy deed to the property. The parties agreed that the value of the property at the time of the divorce was $21,500. They also agreed that at the time of the marriage Dennis had approximately $7,700 in separate credit union accounts.

On September 26 and 27, 1994, a final hearing on the matter was conducted, and on October 31, 1994, the District Court entered its findings of fact, conclusions of law, and decree of dissolution. The District Court awarded the parties joint custody of Matthew and determined that Matthew's primary residence should be with Martha, subject to liberal visitation for Dennis. The District Court ordered Dennis to pay $275 per month in child support and set a visitation schedule for Dennis and Matthew.

The District Court concluded that the value of Martha's home at the time of the marriage was $15,000, noting that a $27,000 home improvement loan the parties received was not determinative as such loans typically include the value of the remodeling efforts. The District Court found that if the house were to be sold for fair market value the first $15,000 of value after payment of outstanding debt should go to Martha with the balance of the sale proceeds shared equally between the parties.

4

The District Court determined that with respect to Dennis's mountain property, the increase in value from the date of marriage to the date of divorce ($8,000 to $21,500) should be equally divided between the parties. While the District Court did not specifically address the separate funds Dennis brought into the marriage, it ordered the parties to equally divide the Franklin Money Market account.

On December 2, 1994, Dennis filed a notice of appeal and a motion for stay of judgment pending appeal. On December 6, 1994, Martha and Matthew left Montana for Oregon. On December 21, 1994, the District Court denied the motion for stay of judgment and this appeal followed.

## ISSUE 1

Did the District Court err in designating Martha the primary custodial parent for Matthew?

The standard of review in a child custody case is whether the district court's findings are clearly erroneous. In re Marriage of Dreesbach (1994), 265 Mont. 216, 220-21, 875 P.2d 1018, 1021. The findings of fact must be based on substantial credible evidence and the court's decision will be upheld unless a clear abuse of discretion is shown. Dreesbach, 875 P.2d at 1021; In re Marriage of Hunt (1994), 264 Mont. 159, 164, 870 P.2d 720, 723.

Dennis argues that he has a very close relationship with his son and that it was not in Matthew's best interest for the District Court to designate Martha the primary custodial parent and allow her to move to Oregon with Matthew. He contends that the District

Court should have given greater consideration to the fact that Matthew was well integrated into the Livingston community and his school and day care environments.

Martha argues that the District Court is in the best position to resolve custody disputes and that the District Court's determination that she should have physical custody of Matthew was supported by the evidence. Martha relies on the custodial evaluation performed by Dr. Kelly and Ms. Saltiel which indicates that Martha has been Matthew's primary caretaker and that it is in Matthew's best interest to have that arrangement continue. She notes that Dennis and the evaluators were aware of her intent to move to Oregon with Matthew and that the District Court addressed Matthew's ability to adjust to a new community in its custody determination.

In custody disputes involving both parents of a minor child, district courts shall award custody according to the best interest of the child as set out in § 40-4-212, MCA. Section 40-4-223, MCA (1993). In making its custody determination, the District Court gave "significant weight" to the results of the custody evaluation performed by Dr. Kelly and Ms. Saltiel. Both evaluators recommended that Martha be designated the primary custodial parent for Matthew. In its findings of fact the District Court stated "[i]n making this determination the Court has considered the provisions of Section 40-4-212 MCA." Due to Matthew's age and his desire to please both parents the court did not consider his wishes in making its determination.

6

The District Court found that Martha had been the primary care giver for Matthew for most of the time during the marriage, as Dennis's employment required that he be gone from the home for four to five days at a time. The court also found that Dennis had shown little interest in Matthew's school activities, having only attended one activity since Matthew had been in school, and that Martha would be better able to provide for him during the school year. The record reflects that the District Court considered the factors set forth in § 40-4-212, MCA (1993), in making its custody determination and that the court's findings are supported by substantial evidence.

We conclude that the District Court's findings relating to custody are not clearly erroneous and we hold that the District Court did not abuse its discretion in awarding the parties joint custody of Matthew and designating Martha as the primary residential custodian. We affirm the District Court on this issue.

ISSUE 2

Did the District Court err in dividing the marital property?

The standard of review of a district court's division of marital property is whether the court's findings of fact are clearly erroneous. If substantial credible evidence supports the court's findings and judgment, this Court will not change the district court's decision unless the court abused its discretion. In re Marriage of Smith (1995), 270 Mont. 263, 267-68, 891 P.2d 522, 525. See also In re Marriage of Maedje (1994), 263 Mont. 262, 265-66, 868 P.2d 580, 583.

The District Court found the value of Martha's home at the time of the marriage to be $15,000. It was undisputed that the house was encumbered by a $10,000 mortgage at the time of the marriage but the District Court failed to match that premarital debt to Martha's premarital equity in the home. Instead, the court found that upon the sale of the home the first $15,000 of value after payment of debt against the house should go to Martha. Dennis argues that in awarding Martha $15,000 as her premarital equity interest in the home the District Court erred by failing to take into account the $10,000 mortgage which encumbered the property at the time.

Martha counters that she requested over $19,000 as her premarital interest in the home, and therefore, the District Court did not err in awarding her $15,000. She claims that the "home improvement" loan in the amount of $27,000 was actually a "home equity" loan based on the appraisal ordered by the bank. Martha contends that the result reached by the District Court was sound, even if its reasoning was flawed by not taking into account the mortgage lien against the home.

We are not persuaded by Martha's arguments. In valuing the home at $15,000 the District Court concluded that Dennis's opinion and expertise as an experienced carpenter carried more weight than Martha's opinion that the home was worth $30,000. Furthermore, in reaching the $19,000 figure as her premarital interest in the home Martha herself subtracted the $10,000 mortgage from her $30,000

8

estimate. The District Court should have done the same when it calculated Martha's equity interest in the home.

We therefore determine Martha's premarital equity interest in the home to be $5,000 ($15,000 estimated value minus $10,000 mortgage). The District Court's finding that the first $15,000 of value after payment of debt against the home should go to Martha is not supported by substantial evidence and is therefore clearly erroneous. We conclude that the District Court abused its discretion in failing to account for the outstanding mortgage when it determined Martha's interest in the home. We reverse the District Court on this issue and remand for further proceedings in this regard.

### Dennis's Separate Funds

The parties agreed that Dennis brought $7,705 in separate funds into the marriage. Dennis argues that the District Court erred in not awarding him that amount as part of the property distribution. Even though the District Court ordered that the parties should equally divide the Franklin Money Market account, it did not specifically address the separate funds Dennis brought into the marriage.

Martha claims that the money was placed into a joint money market account which they used as a general savings account. Dennis does not contest this allegation. Martha and Dennis placed the money received from the home equity loan into the account and paid for various housing projects out of the account. Martha placed money she received from her previous employer's profit

9

sharing plan into the account and she and Dennis paid various bills out of the account, including income taxes, property taxes, and credit card debts. Martha contends that the funds Dennis brought into the marriage were commingled with her profit sharing funds and the home equity loan proceeds. She claims that the account was marital property and that the District Court correctly determined that it should be divided evenly between the parties.

We have stated that under § 40-4-202, MCA, the district court is vested with broad discretion to distribute the marital estate in a manner which is equitable to each party according to the circumstances of the case. Smith, 891 P.2d at 525. Section 40-4-202, MCA, provides that in dividing marital property a court may equitably apportion the parties' property and assets "belonging to either or both, however and whenever acquired."

In distributing premarital property the court must consider the contributions of the other spouse, including:

> (a) the nonmonetary contribution of a homemaker;
> (b) the extent to which such contributions have facilitated the maintenance of this property; and
> (c) whether or not the property division serves as an alternative to maintenance arrangements.

Section 40-4-202, MCA (1993).

In determining that the money market fund should be evenly divided between the parties, the District Court found that "each of the parties hereto has contributed to the fund." In addition to Martha's monetary contributions to the account, Martha testified that she did ninety-five percent of the cooking, cleaning, and laundry in the household, and was responsible for paying all of the

10

bills during the marriage. Her contributions as a homemaker facilitated the maintenance of the account since the household services she provided would have otherwise been expenses of the marriage.

We have held that "[i]ncluding the premarital assets in the marital estate is not an abuse of discretion, nor does it result in substantial injustice." In re Marriage of Peterson (1989), 238 Mont. 470, 475, 778 P.2d 402, 405. We have also recently held that the district court did not abuse its discretion by including in the marital estate property which the husband had brought into the marriage. In re Marriage of Binsfield (1995), 269 Mont. 336, 343-44, 888 P.2d 889, 893.

We conclude that the District Court's finding that the parties had each contributed over the years to the money market fund is supported by substantial evidence and is not otherwise clearly erroneous. Each party made monetary contributions to the account and Martha made nonmonetary contributions as a homemaker. The District Court did not abuse its discretion in determining that the funds from the account should be evenly split between the parties and we affirm the District Court on this issue.

### Dennis's Mountain Property

Prior to the marriage Dennis contributed $8,000 toward the purchase of mountain property in the Crazy Mountains. He purchased the property in 1981 with a friend for $16,000 and owned the land free and clear before he and Martha were married. In 1992 Dennis and his friend divided the property and Dennis received $6,000 and

11

half of the acreage.  At the time of the dissolution hearing the property was valued at $21,500.

The District Court made the following finding **concerning** the mountain property:

> While [Dennis] argues that  [Martha] did nothing to increase the value of this property, it appears that  [Dennis] did nothing either and that the increase is due simply to market factors.  [Dennis] should be entitled to receive the first thousand dollars of equity in this property,  and the difference between the market value of $21,500 and such $8,000 should be shared equally between the parties.

Dennis argues that the entire value of the property should be retained by him as a separate premarital asset.  He maintains that the District Court was correct in finding that the increase in value to the property was due simply to market factors and that Martha did nothing to contribute to the increase in the value of the land.  Dennis further claims that he should receive credit for the $5,200 he deposited in the money market fund from the $6,000 he received when he and his friend divided the property.  He argues that these are proceeds traceable to his premarital asset.

Martha counters that the mountain property was part of the marital estate as she was listed as a joint owner on the deed to the land and notes that the property taxes for the land were paid out of the parties' joint money market account.  In urging us to affirm the District Court Martha relies on Maedje to argue that her contributions as a homemaker should be considered, thus allowing her to receive a portion of the mountain property as part of the marital estate.

12

We conclude that the District Court's finding that the increase in value to the property was due simply to market factors is supported by substantial evidence and is otherwise not clearly erroneous. Martha's contributions as a homemaker in the marriage did not contribute to the maintenance and appreciation of the mountain property. We distinguish our holding in Maedje by noting that in that case the district court specifically found that the spouse had "contributed in some fashion to the maintenance and appreciation of [the] properties." Maedje, 868 P.2d at 584. The District Court should have awarded Dennis the entire value of the mountain property.

However, we do not agree with Dennis that he should receive all of the $5,200 he deposited into the money market account when the property was divided in 1992. We earlier addressed the District Court's distribution of the money market fund and concluded that the District Court did not abuse its discretion in dividing the account evenly between the parties.

We conclude that the District Court abused its discretion in dividing the difference between the present market value of the mountain property and its original purchase price ($21,500 minus $8,000) evenly between the parties. Dennis should receive credit for $21,500, representing the full value of the mountain property. We reverse the District Court on this issue and remand for further proceedings in this regard.

## ISSUE 3

Did the District Court err in determining child support?

13

The standard of review of a district court's award of child support is whether the district court abused its discretion. In re Marriage of Craib (1994), 266 Mont. 483, 490, 880 P.2d 1379, 1384. A presumption exists in favor of the trial court's determination and we will not overturn its findings unless the court has abused its discretion. In re Marriage of Brown (1994), 263 Mont. 184, 187, 867 P.2d 381, 382. This Court has stated that "a district court must apply its discretion in a realistic manner, taking into account the actual situation of the parties." In re Marriage of Noel (1994), 265 Mont. 249, 252, 875 P.2d 358, 359. See also In re Marriage of D.F.D. and D.G.D. (1993), 261 Mont. 186, 203, 862 P.2d 368, 378-79; In re Marriage of Anderson (1993), 260 Mont. 246, 255-56, 859 P.2d 451, 457.

After reviewing the child support guideline work sheets submitted by the parties, the District Court determined that Martha's calculation of $310 per month was correct. However, the District Court granted Dennis a variance in the amount of $35 per month for long-distance visitation costs for which it determined Dennis would be responsible. The amount of child support was therefore set at $275 per month. The District Court also ordered Dennis to maintain health insurance coverage for Matthew. Dennis argues on appeal that the District Court erred in not crediting his child support amount to account for the health insurance premium payments.

Dennis's argument on this issue is not persuasive. At the time of the dissolution hearing, Dennis had not secured health

14

insurance coverage for Matthew. Martha had enrolled Matthew in the COBRA extension plan offered by her previous employer and was paying the premium associated with the coverage. Dennis cannot now argue that he should have received credit on his child support for insurance coverage he was not providing at the time of the hearing.

We conclude that the District Court did not abuse its discretion in setting the amount of child support at $275 per month. The amount is realistic and takes into account the actual situation of the parties. We affirm the District Court on this issue.

ISSUE 4

Did the District Court err in establishing a visitation schedule for Matthew?

Our standard of review for visitation is whether substantial credible evidence supports the district court's findings Dreesbach, 875 P.2d at 1022 (citing In re Marriage of Nash (1992), 254 Mont. 231, 234, 836 P.2d 598, 600). We will overturn a court's visitation decision only when the court's findings and conclusions clearly demonstrate an abuse of discretion. Dressbach, 875 P.2d at 1022 (citing In re Marriage of Anderson (1993), 260 Mont. 246, 254-55, 859 P.2d 451, 454).

The District Court determined that Dennis should exercise his visitation with Matthew during the entire summer vacation, commencing on the Tuesday after school ends in the spring and terminating ten days before school begins in the fall. In addition, Dennis received visitation on an alternating basis during

the Christmas and Thanksgiving holidays and during the spring break vacation. The District Court stated that this plan "recognizes the fact that [Martha] is living in Oregon and [Dennis] will remain in Livingston." As noted above, the court also determined that Dennis should be responsible for transportation costs associated with the long-distance visitation.

Dennis contends that Martha should have to pay at least one-half of the transportation costs and also argues that the District Court erred in establishing a visitation schedule that departs from the one recommended by Dr. Kelly and Ms. Saltiel. The custody evaluators recommended that Dennis have visitation for the summer vacation, every spring break, on alternating Thanksgiving holidays and for one week every Christmas--the difference being that the District Court's plan alternated the spring break vacation and the Christmas holiday.

The District Court recognized the fact that Martha lives in Oregon and Dennis resides in Livingston. We conclude that the District Court did not abuse its discretion in adjusting the visitation schedule based on the physical distance between the parties. Furthermore, since Dennis receives credit against his child support for long-distance visitation, we conclude that the District Court did not abuse its discretion in determining that Dennis should be responsible for transportation costs. We affirm the District Court on this issue.

We affirm in part, reverse in part and remand to the District Court for reconsideration of its equitable distribution of the

16

marital estate, based on our holdings on Issue 2 and the record before it, and for the entry of an amended final decree relating to the distribution of the marital estate which is consistent with this opinion.

_____
Justice

We concur:

_____

_____

_____
Justices