No. 98-483

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 219N

IN RE THE MARRIAGE OF:

DIXIE LEE KENNEDY,

Petitioner and Appellant,

and

KEVIN K. KENNEDY,

Respondent and Respondent.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable Mike Salvagni, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

James Maher, Attorney at Law; Basin, Montana

For Respondent:

Helene Orenstein, Attorney at Law; Bozeman, Montana

_____

Submitted on Briefs: June 3, 1999

Decided: September 15, 1999

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

1. ¶Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal

Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

2. ¶The Petitioner, Dixie Lee Kennedy, filed a petition requesting the dissolution of her marriage to Respondent, Kevin Kennedy, in the District Court for the Eighteenth Judicial District in Gallatin County. The matter was initially heard by Special Master Anne Watson. The Special Master's findings of fact and conclusions of law were challenged by Dixie and subsequently modified by the District Court. The District Court entered a decree of dissolution dividing the couple's marital property from which Dixie appeals. We affirm the judgment of the District Court.

3. ¶Dixie's appeal raises the following issue:

4. ¶Did the District Court inequitably distribute the appreciated value of the couple's marital residence?

## FACTUAL BACKGROUND

1. ¶Dixie met Kevin at Fairmont Hot Springs in 1988 and moved into Kevin's home in Bozeman, Montana on April 1, 1989. They were married in Anaconda, Montana, on April 1, 1990, exactly one year after Kevin and Dixie began living together. Both Dixie and Kevin have each been married once before and have children from those marriages. Dixie has three children from her first marriage, one of whom, "Jake," lived with Kevin and Dixie. Kevin has one child from his previous marriage, Hillary, of whom he has joint custody and for whom he is still paying child support. Hillary lived with Kevin and Dixie on alternating weekends and holidays.

2. ¶Kevin acquired the couple's Bozeman residence prior to the marriage. In 1977, Kevin's parents gave him 1.5 acres of land on West Baxter Street in Bozeman, Montana. Using a loan of $25,000 and $10,000 of his own money, Kevin built a house on this property. Dixie began residing in the Bozeman residence on April 1, 1989, one year before their marriage, and resided there until October 15, 1995. During their marriage, Kevin and Dixie made the loan payments out of a joint account. As of January 21, 1997, Kevin owed $12,178.23 on the initial loan.

3. ¶Dixie had the home appraised to determine the change in its value from the beginning of the marriage to the date the couple separated. As of April 1990, the appraised value of the house was $62,000. By the time the couple had separated, the appraised value of the house had increased $56,000 to a total appraised value of

$118,000. Both parties helped to maintain the house. Dixie and Kevin painted the interior and exterior of the house, and remodeled a portion of the basement, adding a bedroom and bathroom. Dixie also made improvements to the upstairs bathroom and an entryway, and replaced the linoleum flooring in the kitchen.

4. ¶Additionally, Dixie brought real estate holdings to the marriage. In November 1989, Dixie purchased a cabin in Anaconda, Montana for $15,000. Prior to the marriage, she made approximately $1500 in payments toward the cabin from her separate funds. During the marriage, the couple made $4900 in payments out of a joint fund. On March 31, 1991, Kevin's parents gave him a check for $10,000. Kevin characterized this check as an inheritance gift from his parents, while Dixie characterized it as an anniversary gift. Initially, Dixie placed this money into a college fund for Dixie's daughter, Jake. However, in April 1991, Dixie and Kevin decided to pay off the remaining balance on the Anaconda cabin and Dixie removed $8600 from Jake's college fund. After Dixie and Kevin's separation, Dixie sold the cabin for approximately $21,000.

5. ¶At the time of trial, Dixie was 53 years old and employed as a bookkeeper at Service Electric in Bozeman; Kevin was 42 years old and employed as a Detention Officer at the Gallatin County Detention Center. Dixie's gross income from Service Electric was approximately $35,000 for 1996. Kevin's gross income was approximately $19,000 for 1996. Both parties had similar retirement savings.

6. ¶Dixie and Kevin separated on October 15, 1995. On October 16, 1996, Dixie filed a petition for dissolution in the District Court for the Eighteenth Judicial District in Gallatin County. In this petition, Dixie requested certain items of personal property as well as a $40,000 lump sum representing her monetary and nonmonetary contributions to the marriage. Neither party requested maintenance. Subsequently, Dixie and Kevin submitted a stipulated agreement regarding the division of personal property. However, Dixie and Kevin could not agree on an equitable division of two parcels of real estate: the Bozeman residence and the Anaconda cabin.

7. ¶The matter was heard by Special Master Anne Watson on April 8, and May 1, 1997. On June 30, 1997, the Special Master filed her report. As for the Bozeman residence, the Special Master found that the increase in the value of the Bozeman residence was due simply to market factors and denied Dixie's claim to a percentage of its appreciation. As for the Anaconda cabin, the Special Master concluded that, because the Anaconda cabin was substantially paid for during the marriage from joint funds, the proceeds from the sale should be divided equally between the parties, after awarding each party their respective contributions toward the purchase of the cabin made from separate funds. The Special Master awarded the final cabin

payment of $8600 to Kevin, as well as $1400 from Dixie's daughter's college fund, finding that these funds originated from a $10,000 inheritance gift Kevin received from his parents. Lastly, Dixie received the proceeds from the sale of a trailer which she acquired prior to the marriage.

8. ¶On July 14, 1997, Dixie filed a motion opposing the Special Master's findings of fact and conclusions of law. Dixie maintained that the Special Master ignored her contributions to the marriage pursuant to § 40-4-202(1), MCA, by awarding the entire increased value of the Bozeman residence to Kevin. On May 13, 1998, the District Court entered its decree of dissolution. The Court found that the Special Master's findings of fact were erroneous to the extent that they did not recognize Dixie's contributions to the maintenance of the Bozeman residence. The court held that, as a result of Dixie's contributions, she was entitled to one-fourth of the increase in the value of the Bozeman residence. Dixie appeals the District Court's decree of dissolution.

## STANDARD OF REVIEW

1. ¶We review a District Court's division of marital property to determine whether the findings on which it relied are clearly erroneous and whether the court correctly applied the law. *In re Marriage of Foreman* 1999 MT 89, ¶ 14, 979 P.2d 193, ¶ 14, 56 St.Rep. 373, ¶ 14. If the District Court's findings are not clearly erroneous, we will affirm the distribution of property unless the District Court abused its discretion. *In re Marriage of Stufft* (1996), 276 Mont. 454, 459, 916 P.2d 767, 770; *In re Marriage of Hogstad* (1996), 275 Mont. 489, 496, 914 P.2d 584, 588; *In re Marriage of Smith* (1995), 270 Mont. 263, 267-68, 891 P.2d 522, 525. The test for determining whether a district court abused its discretion is whether the district court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *In re Marriage of Meeks* (1996), 276 Mont. 237, 242, 915 P.2d 831, 834.

## DISCUSSION

1. ¶Did the District Court inequitably distribute the appreciated value of the couple's marital residence?

2. ¶Dixie contends that the court improperly weighed her monetary and nonmonetary contributions to the marriage when it awarded her only one-fourth of the appreciated value of the couple's Bozeman residence. In particular, Dixie contends that the

District Court ignored her monetary and nonmonetary contributions to the maintenance of the couple's Bozeman residence. Dixie maintains that she shared the costs and labor associated with remodeling the basement, improving the kitchen and upstairs bathroom, and painting the interior and exterior of the couple's residence. Furthermore, Dixie maintains that she made numerous monetary and nonmonetary contributions to the marriage, including earning the majority of the couple's income, performing the majority of the housework, shopping for groceries, running errands, bookkeeping, and taking care of Kevin's daughter Hillary, during Hillary's visits. Kevin contends that the District Court committed no error.

3. ¶Section 40-4-202(1), MCA, governs the distribution of premarital assets and provides in relevant part:

In dividing property acquired prior to the marriage . . . the court shall consider those contributions of the other spouse to the marriage, including:

(a) the nonmonetary contribution of a homemaker;

(b) the extent to which such contributions have facilitated the maintenance of this property; and

(c) whether or not the property division serves as an alternative to maintenance arrangements.

1. ¶"[P]reacquired or gifted property need not be included in the marital estate unless the nonacquiring spouse contributed to its preservation or appreciation." *In re Marriage of Engen*, 1998 MT 153, ¶ 29, 289 Mont. 299, ¶ 29, 961 P.2d 738, ¶ 29; *see also Hogstad* (1996), 275 Mont. at 499, 914 P.2d at 590. If the nonacquiring spouse did contribute to the preservation of premarital or gifted property, the nonacquiring spouse is entitled to an equitable share of the appreciated or preserved value. *Engen*, ¶ 29, *see also In re Marriage of Maedje* (1994), 263 Mont. 262, 868 P.2d 580. District Courts are granted far-reaching discretion to fashion "a fair distribution of the marital property using reasonable judgment and relying on

common sense." *Foreman, ¶ 23* (*quoting In re Marriage of Rock* (1993), 257 Mont. 476, 480, 850 P.2d 296, 298).

2. ¶The record supports the conclusion that the District Court adequately considered Dixie's monetary and nonmonetary contributions when dividing the marital estate. Based on the testimony of both Kevin and Dixie, the court found that Dixie did all the parties' bookkeeping and housecleaning, while Kevin did all the cooking. The court found that both Dixie and Kevin worked throughout the marriage and "used their combined wages to support the needs of the family." The court also observed that both Dixie and Kevin contributed to the maintenance of the Bozeman residence by painting the exterior and interior of the house as well as remodeling the basement. Following our decision in *Maedje*, the District Court correctly concluded that the appreciated value of the Bozeman residence should be included in the marital estate and disregarded the Special Master's recommendation to award the Bozeman residence entirely to Kevin.

3. ¶We conclude that because there is substantial evidence to support the District Court's finding that "the increase in value of the home was due simply to market factors," that finding is not clearly erroneous. The record is replete with numerous references to Dixie's monetary and nonmonetary contributions toward the maintenance of the Bozeman residence. Kevin testified that Dixie and her daughter wallpapered and carpeted an upstairs bathroom, Dixie had new linoleum installed in the kitchen, she painted some interior walls, improved an entryway, and also assisted Kevin in the remodeling of the basement. However, the court noted that Dixie did not substantiate her claim that these improvements caused the couple's home to increase in value. Significantly, the court observed that the appraisals used to establish the $56,000 increase in the value of the Bozeman residence were conducted without the benefit of an interior inspection of the maintenance and improvements performed by Kevin and Dixie. Based on the testimony of Kevin's expert, Gary France, an appraiser and broker, the court found that the appreciation in value attributed to the Bozeman residence was due to local market factors and not to the maintenance or improvements performed by Kevin and Dixie. After inspecting the interior and exterior of the house, Mr. France testified that although the improvements might have increased the utility of the couple's house, they did not necessarily result in a greater market value. This finding was also supported by information contained in a 1995 appraisal of the Bozeman residence, performed at Dixie's instigation, which indicates that between 1990 and 1995, the average sales price for homes in the city of Bozeman increased by more than 80 percent.

4. ¶Because Dixie did contribute "in some fashion" to the maintenance of the home,

the District Court correctly concluded that Dixie was entitled to some part of its appreciated value. *See Engen,* ¶ 29; *Maedje*, 263 Mont. at 269, 868 P.2d at 584. However, § 40-4-202, MCA, requires the court to make an equitable distribution of marital assets, not an equal distribution. *In re Marriage of Nordberg* (1994), 265 Mont. 352, 360, 877 P.2d 987, 992; *In re Marriage of Fitzmorris* (1987), 229 Mont. 96, 745 P.2d 353. Rather, the nonacquiring spouse is entitled to an equitable share of the appreciated value attributable to her efforts. *Engen,* ¶ 29.

5. ¶We hold that the court did not abuse its discretion by awarding Kevin three-fourths of the appreciation of the Bozeman residence. The court's finding that the increased value was due to market factors was based on substantial evidence. Because of this finding, the District Court could have reasonably concluded that, despite Dixie's monetary and non-monetary contributions to the marriage, Kevin deserved a greater share of the increased appreciation of the Bozeman residence.

6. ¶We affirm the District Court's distribution of the increased value of the Bozeman residence.


/S/ JIM REGNIER

We Concur:


/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER