NO. 95-279

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

IN RE THE MARRIAGE OF

ADRIAN G. WALLS a/k/a A.G.
WALLS and/or JOE WALLS,

     Petitioner and Respondent,

  and

MARILLEN WALLS,

     Respondent and Appellant.

**FILED**

OCT 1 8 19%

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Ninth Judicial District,
In and for the County of Toole,
The Honorable R.D. McPhillips, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

       Joan Meyer Nye, Nye & Meyer, Billings, Montana

     For Respondent:

       Don LaBar, Church, Harris, Johnson &Williams, Great
Falls, Montana


Submitted on Briefs:  July 25, 1996

Decided:  October 18, 1996

Filed:

_____
Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

Appellant Marillen Walls (Marillen) appeals the decision of the Ninth Judicial District Court, Toole County, dissolving her marriage to Respondent Adrian G. Wells (Joe) and dividing the marital estate. We affirm.

## ISSUES

The following issues are dispositive of this appeal:

1. Did the District Court's err in its valuation of the marital estate?

2. Did the District Court's err in its distribution of marital property and debts?

3. Did the District Court err by denying maintenance to Marillen?

4. Did the District Court err by denying attorney's fees to Marillen?

5. Did the District Court err by substantively adopting Joe's proposed findings of fact?

## FACTS

Joe and Marillen were married in 1983. They separated in 1991 and divorced in 1994. No children were born of the marriage, although each party has a minor son from a former marriage. At the time of the divorce, Joe was 66 and Marillen was 34. Before and during the marriage, Joe worked in the oil and gas business, managing his own corporation, A & G Drilling, as well as his other oil and gas interests. Marillen did not work outside of the home

2

during the marriage, except to occasionally run an errand for Joe's business.

When Joe and Marillen were married, Joe's oil and gas interests were valued at in excess of $2 million. At the time of the divorce, the oil and gas interests had decreased in value to between $500,000 and $1,000,000. In dividing the marital property, the District Court awarded the entirety of these interests to Joe, but also made Joe responsible for all debts attendant to them. Marillen was awarded her car, jewelry, furniture, clothing, and various bank accounts. Marillen appeals this division of the marital estate.

*STANDARD OF REVIEW*

The standard of review of a district court's division of marital property is whether the court's findings of fact are clearly erroneous. In re Marriage of Hogstad (1996), 275 Mont. 489, 496, 914 P.2d 584, 588. If substantial credible evidence supports the district court's judgment, it will not be disturbed absent an abuse of discretion. Hogstad, 914 P.2d at 588; In re Marriage of Meeks (Mont. 1996), 915 P.2d 831, 834, 53 St.Rep. 365, 366.

Further, the district court has broad discretion in determining the value of property in a dissolution. It may adopt any reasonable valuation of marital property which is supported by the record, and its findings regarding property valuation will not be disturbed unless clearly erroneous. Meeks, 915 P.2d at 835 (quoting In re Marriage of Robinson (1994), 269 Mont. 293, 888 P.2d

3

895). In dividing a marital estate, the district court **must** reach an equitable distribution, not necessarily an equal distribution. In re Marriage of Barker (1994), 264 Mont. 110, 114, 870 P.2d 86, 88 (citing In re Marriage of Shelton (1986), 219 Mont. 456, 712 P.2d 782).

*DISCUSSION*

1. Did the District Court err in its valuation of the marital estate?

Marillen alleges that the District Court erred in its valuation of the marital estate because the court failed to determine the net worth of the marital assets at or near the time of the dissolution. Instead, the District Court valued the assets given to Joe at the time of trial but valued the assets given to Marillen at the **time** of separation.

Generally, a district court must determine the net value of the marital estate at or near the time of dissolution, prior to dividing the property. In re Marriage of Lippert (1981), 192 Mont. 222, 627 P.2d 1206; In re Marriage of Stephenson (1989), 237 Mont. 157, 772 P.2d 846. However, this Court has recognized that "under [some] circumstances, selection of a single evaluation point for determining net worth of the parties could create an inequitable disposition." Lippert, *627* P.2d at 1208. A net valuation by the district court therefore is not always mandatory. Rather, "the test is whether the findings as a whole are sufficient to determine the net worth and to decide whether the distribution is equitable." Stephenson, 772 P.2d at 848 (citing In re Marriage of Nunnally (1981), 192 Mont. 24, *625* P.2d 1159).

4

In this case, several assets last known to be in Marillen's possession had disappeared by the time of trial. In particular, Marillen claimed that two diamond rings, other jewelry, and a large amount of cash were stolen from her car during the time the parties were separated. The District Court valued these missing assets at close to $30,000 and charged their loss against Marillen's share of the estate. It found that, if these items were in fact stolen, the loss resulted from her negligence and carelessness in keeping such items in her car. In effect, the District Court determined that Marillen had dissipated this part of the estate. Such dissipation can justify a district court's selection of separate valuation dates for the estates of the respective parties. In re Marriage of Hurley (1986), 222 Mont. 287, 297, 721 P.2d 1279, 1286.

Marillen also disputes the inclusion of $5000 in her share of the estate, when she had used that money to pay a retainer to her attorney prior to trial. Again, the District Court found that such payment was properly charged to Marillen as an expense incurred on her behalf during the separation. For this reason, it valued the asset as if it were still in her possession. Under the facts of this case, the valuation of the parties' assets at different times was not an abuse of discretion.

2. Did the District Court err in its distribution of marital property and debts?

Marillen also disputes the District Court's apportionment of the marital estate. As noted above, the District Court allotted to Joe all of the oil and gas interests, which are, at least in theory, income-producing, as well as the debts associated

5

therewith. At the same time, the District Court allotted to Marillen the household furnishings, her car, her clothing and her jewelry. Marillen asserts that it was clearly erroneous for the court to divide the marital estate in this manner. Specifically, she asserts that the District Court erred in awarding all the oil and gas interests to Joe.

Section 40-4-202(1), MCA, provides in part:

In dividing property acquired prior to the marriage . . . the court shall consider those contributions of the other spouse to the marriage, including:
    (a) the nonmonetary contribution of a homemaker;
    (b) the extent to which such contributions have facilitated the maintenance of this property; and
    (c) whether or not the property division serves as an alternative to maintenance arrangements.

In this case, the oil and gas business was owned and operated by Joe prior to the marriage. While some of the specific interests were sold and others acquired during the marriage, the business as a whole did not change, and it continued to be managed solely by Joe throughout the marriage. In considering the factors listed in § 40-4-202(1), MCA, the District Court found that, while Marillen had made limited contributions as a homemaker, her contributions had not facilitated the maintenance of the oil and gas interests.

Moreover, the division of the marital estate in this case was premised not only on the fact that Joe brought the oil and gas interests into the marriage, but also on the recognition that those interests carry substantial debts and have decreased in value significantly during the time of the marriage. At the time of the marriage, Joe's net worth exceeded $2 million. Because of the

6

depression in the oil and gas industry, Joe's net worth at trial had decreased to between $500,000 and $1,000,000. This net worth reflected over $350,000 in debts attendant to the business, but did not include the future expense of plugging the depleted wells, which the District Court estimated would cost well over $1,000,000.

In this case, the District Court chose to return the parties to the approximate positions they occupied before the marriage. While such a result is not required, it is permissible if the resulting apportionment is equitable. In re Marriage of White (1985), 218 Mont. 343, 345, 708 P.2d 267, 269. When, as here, the marriage was of relatively short duration and the husband's net worth has significantly decreased, such a division is not inequitable. See, e.g., In re Marriage of Turbes (1988), 234 Mont. 152, 762 P.2d 237. Given that Joe's business interests predate the marriage, have decreased in value during the marriage, and were not facilitated or maintained by Marillen, the District Court's division of the marital estate was an equitable one.

3. Did the District Court err by denying maintenance to Marillen?

Marillen next alleges that the District Court erred by denying her request for maintenance. She contends that the District Court's finding that she is able to support herself through appropriate employment is clearly erroneous

Section 40-4-203(1), MCA, provides in part:

In a proceeding for dissolution of marriage or legal s e p a r a t i o n the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:

7

(a) lacks sufficient property to provide for his reasonable needs; and
(b) is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

In this case, the District Court determined that Marillen was able to support herself through appropriate employment. It found that she is relatively young and in good health, while Joe is retired and unable to meet his own expenses because of a monthly loan payment exceeding $5000. Further, it noted that Marillen has secured work as a waitress and should be able to meet her own monthly expenses without an award of maintenance. These findings were supported by the evidence presented and are not clearly erroneous.

4. Did the District Court err by denying attorney's fees to Marillen?

Marillen claims that the District Court erred by denying her claim of attorney's fees. Section 40-4-110, MCA, provides:

The court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under chapters 1 and 4 of this title and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name.

This statute is discretionary; while it allows the District Court to award attorney fees if warranted, it does not mandate such a result. A district court's determination regarding attorney's fees will not be disturbed in the absence of an abuse of discretion. In

re Marriage of Sullivan (1993), 258 Mont. 531, 540, 853 P.2d 1194, 1200.

Here, the District Court awarded Marillen assets totalling over $65,000. While the majority of premarital assets were awarded to Joe, the disproportionate nature of the property division does not automatically entitle Marillen to attorney's fees. The District Court found that Marillen had the financial ability to pay her own fees. Given the value of the property she was awarded, this determination was not an abuse of discretion.

5. Did the District Court err by substantively adopting Joe's proposed findings of fact?

The District Court adopted many of Joe's proposed findings of fact and conclusions of law as its own in this case. Marillen asserts this adoption was error.

As we have repeatedly noted, adoption of one party's proposed findings and conclusions is not in itself grounds for reversal. In re Marriage of Stufft (Mont.1996), 916 P.2d 767, 769, 53 St.Rep. 467, 467-68 (citing In re Marriage of Purdy (1988), 234 Mont. 502, 764 P.2d 857). If proposed findings and conclusions are adopted by the court, they become the court's own and, as such, are reviewed for clear error and correctness of law. Stufft, 916 P.2d at 769 (citing Daines v. Knight (1995), 269 Mont 320, 888 P.2d 904; and Kreger v. Francis (1995), 271 Mont. 444, 898 P.2d 672). Here, we have reviewed the District Court's findings of fact and judge that they are supported by the ·record and are not otherwise clearly erroneous.

A thorough review of the record in this case reveals no reversible error. The decision of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

10

October 18, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Joan Meyer Nye
Nye & Meyer
3317 Third Ave. No.
Billings, MT 59101

Don LaBar, Esq.
Church, Harris, Johnson & Williams
P.O. Box 1645
Great Falls, MT 59403

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy