No. 96-253

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

IN RE THE MARRIAGE OF

SHAWN LEE,

Petitioner and Respondent,

and

LISA KERRY LEE,

Respondent and Appellant.

APPEAL FROM:District Court of the Twenty-First  Judicial District, In and for the County of Ravalli, the Honorable Jeffrey H. Langton,  Judge Presiding.

COUNSEL OF RECORD:

For Appellant:

Richard A. Reep, Reep, Spoon & Gordon, Missoula, Montana

For Respondent:

Richard R. Buley, Tipp & Buley, Missoula, Montana

Submitted on Briefs: April 4, 1997

Decided:  May 13, 1997
Filed:

_____
Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Shawn Lee and Lisa Kerry Lee were divorced in 1996.  Lisa appeals from the findings, conclusions, decree of dissolution, and other rulings of the Twenty-First Judicial District Court, Ravalli County.  We affirm.

Lisa raises eight issues on appeal, which we restate as follows:

1.   Did the District Court err when it modified its temporary maintenance order?

2.   Did the District Court err when it awarded maintenance of $100 a year to Lisa?

3. Did the District Court err when it ordered returned an issued writ of execution?

4. Did the District Court err when it did not consider Shawn's failure to carry health insurance for Lisa?

5. Did the District Court err when it valued Shawn's veterinary practice?

6. Did the District Court err when it did not consider Lisa's contribution of premarital property and inherited funds?

7. Did the District Court err when it refused to hear Lisa's testimony as an expert witness concerning the value of the clinic?

8. Did the District Court err when it failed to award Lisa attorney fees?

## BACKGROUND

Shawn and Lisa were married in 1985. At the time of their marriage, neither party owned any significant assets. No children were born of the marriage.

Lisa obtained a Bachelor of Arts degree in radio/television advertising management in 1983 and worked full-time until 1987, when she quit due to job-related stress. Lisa suffers from health problems but maintains an active lifestyle and full-time employment. Following the parties' separation, Lisa was employed by a veterinary clinic earning $1,600 per month. She applied to law school in 1995 but was not admitted.

Shawn obtained a Bachelor of Science degree in 1986 and his doctorate in veterinary medicine in 1990 from Washington State University. He financed his education with loans, in his name only, that totaled $61,500. From 1983 to 1996, he also obtained a total of $50,000 from his parents. No promissory notes were executed for these funds, and no interest or specific repayment plan was discussed.

Between 1986 and 1988, Lisa received $45,000 from her grandmother's estate, which was deposited in a joint account in the names of Lisa, her mother, and her brother. The inheritance was apparently spent for the joint living expenses of Shawn and Lisa. From 1984 to 1993, Shawn and Lisa reported total taxable incomes of $103,462 and $101,111 to the IRS.

In 1993, the parties moved to Hamilton, Montana, to establish the Montana Large Animal Veterinary Clinic, obtaining a $108,000 SBA loan and a $30,000 unsecured loan to open the clinic. The SBA loan is a joint loan between Shawn and Lisa and is guaranteed by Shawn's parents. The other loan is personal to Shawn. Eighty-four thousand dollars is still owed on the SBA loan.

Shawn and Lisa opened the clinic in 1993. They projected their first-year income at $120,000, which was exceeded by $10,000, but they underestimated their expenses. Although their business plan projected a break-even first year after a $30,000 salary, the Lees suffered a loss of over $18,000 with no salary. The parties offered conflicting evidence regarding Lisa's involvement with the clinic. Shawn acknowledged that Lisa attempted to promote the clinic among horse owners and performed bookkeeping and office functions, but denied that she played a significant role as a veterinary assistant as originally planned.

In 1994, Shawn petitioned for dissolution of marriage. Lisa requested temporary maintenance of $4,800 per month, based on her ordinary living expenses established during the marriage. The court awarded her $1,500 per month in temporary maintenance and $175 per month for the care of the parties' horses. On March 28, 1995, the District Court issued a writ of execution in favor of Lisa for unpaid maintenance, but then the court ordered the writ returned. Shawn moved to modify temporary maintenance due to insufficient income.

After Shawn failed to make any substantial maintenance payments, a contempt hearing was held. The court ordered Shawn incarcerated for one day and allowed him twenty days to bring temporary maintenance into compliance. On July 11, 1995, the District Court heard Shawn's motion to modify temporary maintenance. The court found that the clinic had a "negative value." In 1994, Shawn reported $101,700 in gross receipts, leaving the clinic with a net loss of $2,600, with no salary paid. In 1995, the clinic grossed $75,000. The court determined that Shawn had proven unable to support himself and to pay maintenance and ordered cessation of temporary maintenance. It also reserved jurisdiction to reconsider modification of temporary maintenance retroactively and ordered Shawn to provide Lisa with health insurance until the parties' marriage was

dissolved.

At trial, Shawn testified that the parties' breakup caused a decline in patronage, and he lost accounts due to ownership changes. He relied on a friend for a place to live and basic living expenses, supplemented by loans from his parents. Dr. Brown, a veterinarian with a large animal practice in Missoula, Montana, testified that in 1995 his gross income was $95,000. Dr. Kelly, a veterinarian with a large animal practice in Corvallis, Montana, testified that during the first year of her clinic in 1995, she earned over $10,000 per month in gross receipts.

The District Court calculated the parties' assets as $64,775 and the debts incurred during the marriage as $228,455. It then divided the marital estate as follows:

|  | Shawn | Lisa |
|---|---|---|
| Assets | $ 38,500 | $26,275 |
| Debts | -$38,251 | -$190,204 |
| Net Distribution | -$151,704 | -$11,976 |

The court concluded that Shawn should be liable for the debt owed to his parents, and Lisa should be liable for her contract for deed obligations associated with property acquired after the parties' separation. The court dissolved the marriage, retroactively modified its 1994 order requiring temporary maintenance, ordered Shawn to pay maintenance of $100 a year for five years and $686 in back-due temporary maintenance, and ordered Shawn and Lisa to bear their own legal fees. Lisa appeals from the findings, conclusions, final decree, and other rulings issued during the action.

DISCUSSION

1. Did the District Court err when it modified its temporary maintenance order?

Lisa argues that the District Court lacked jurisdiction in July 1995 to modify temporary maintenance because Shawn's motion should have been deemed denied for not having been ruled on within forty-five days pursuant to Rule 52(d), M.R.Civ.P. This argument misconstrues Rule 52(d), which applies to Rule 52(b) motions to amend a final judgment and associated findings of fact and conclusions of law. We conclude that the District Court had jurisdiction to modify temporary maintenance.

Lisa maintains that Shawn's motion to modify temporary maintenance was previously denied and that no other motion was before the court. Lisa misstates the record. On October 28, 1994, Shawn moved to modify temporary maintenance. The hearing was continued. At a contempt hearing on June 14, 1995, Shawn explained why he had not paid temporary maintenance and moved for a hearing on his outstanding motion to modify temporary maintenance, which was held on July 11, 1995. When the District Court ruled on Shawn's motion to modify temporary maintenance, it ruled on a still-pending motion. We hold that the District Court did not err when it modified its temporary maintenance order.

Lisa also argues that the District Court amended its temporary maintenance order without making proper findings and conclusions. Lisa has not provided this Court with a complete transcript of the July 11, 1995, hearing for modification of temporary maintenance. Absent a complete record of the hearing, we are not in the position to, and will not, review the trial court's findings related to modification of temporary mainte- nance.

2. Did the District Court err when it awarded maintenance of $100 a year to Lisa?

Lisa requested $3,333 monthly in maintenance for sixty months to fund a law school education, pay bills, and provide for living expenses. The court awarded her $100 in annual maintenance for five years based on its determination that Shawn had insufficient income to meet the needs of himself and Lisa. Lisa argues the court erred because: (1) it did not consider all of the requirements of 40-4-203, MCA; (2) it did

not impute income to Shawn; and (3) it did not provide Lisa with rehabilitative maintenance.

We review a district court's award of maintenance to determine if the court's findings are clearly erroneous. In re Marriage of Eschenbacher (1992), 253 Mont. 139, 142, 831 P.2d 1353, 1355. The District Court made the following findings of fact concerning maintenance:

54. Lisa lack[s] sufficient property to provide for her reasonable needs. She will emerge from this action with a negative net worth and in debt. She [owns] an adequate home but has insufficient resources to finish the remodeling and . . . no equity in the property.

55. Lisa is able to support herself at a spartan level while making payments on the debt allocated to her through appropriate employment . . . . . She has a college education and a varied work history at responsible jobs. She is currently a business manager of a prospering veterinary clinic . . . receiving . . . net pay of $603.85 biweekly. . . . Lisa lacks sufficient disposable income to monthly retire her current debts in full, obtain health insurance, or the medical care she requires, much less the upper middle class lifestyle the couple originally aspired to. Nevertheless she has continued to retain custody of the horses the [c]ourt concluded should be sold to pay expenses . . . .

56. Shawn is leaving the marriage under a staggering debt load and with a far worse negative net worth than Lisa. After three years in Montana . . . his professional practice is in a downward spiral with three successive years of losses. His business is worth less now than three years ago. His professional income is enough to make payments on the marital debt sufficient to prevent collection suits and foreclosure as well as immediate business accounts payable, but is insufficient to provide any draw or salary. His personal needs are being met by his parents and . . . this situation is [not] likely to change without his bankruptcy or closure of the practice and acceptance of an employment position which would likely carry a monthly salary . . . insufficient to service the debt load and provide any other income for his individual needs or individual acquisition of capital assets.

Based on these facts, and the other factors required by 40-4-203, MCA, the District Court concluded that no significant award of maintenance was warranted or possible. However, because it was concerned that a near-term reversal of Shawn's fortunes following the final decree could cause an inequitable long-term result, it ordered Shawn to pay Lisa maintenance of $100 per year for five years, subject to modification by Lisa upon a showing of changed circumstances so substantial and continuing as to make the terms of the decree unconscionable under 40-4-208(2)(b), MCA.

The District Court found that Lisa lacked sufficient property to provide for her reasonable needs but also found that she was able to support herself through appropriate employment. These findings do not appear to meet the statutory criteria necessary for maintenance under 40-4-203, MCA, which require as a condition precedent to an award of maintenance, that the court must find the spouse seeking maintenance "lacks sufficient property to provide for [her] reasonable needs; and is unable to support [her]self through appropriate employment." Section 40-4-203(1), MCA; See also In re Marriage of Luisi (1988), 232 Mont. 243, 247-48, 756 P.2d 456, 459. However, this Court has held the term "appropriate employment," as used in 40-4-203, MCA, "must be determined with relation to the standard of living achieved by the parties during the marriage." Luisi, 756 P.2d at 459.The District Court qualified its findings by explaining that Lisa was able to support herself at a spartan level through appropriate employment. The court considered Lisa's need for health insurance, her continuing medical problems, her income and debt, and lowered standard of living. The court also considered Shawn's financial situation and ability to meet his needs when it awarded Lisa $100 in annual maintenance. We conclude that the District Court's findings are not clearly erroneous, and that in its

sixty findings the court adequately considered the factors contained in  40-4-203, MCA, when it awarded maintenance.

Lisa argues that the District Court should have imputed income to Shawn to reflect his earning capacity and his ability to pay maintenance. The findings do not support such a result. The evidence showed that Shawn's clinic suffered from a decline in gross receipts due to a loss of clients and increased competition from other veterinarians, not from his lack of willingness to work. We hold that the District Court did not err when it did not impute income to Shawn.

Lisa also claims that she is entitled to an award of rehabilitative maintenance because her full-time employment from 1984 to 1987 made it possible for Shawn to attend school and obtain his degree, that she contributed her inheritance to support Shawn, and that her earnings between 1990 and 1993 supplemented Shawn's employment before he established his practice in Hamilton. Shawn argues that through extensive loans he financed his own education and part of the parties' living expenses. He notes that over the first decade of the parties' relationship they had nearly equal earnings. He maintains that his education and license have no intrinsic value, are not marketable or transferrable, and have no value apart from his professional practice. We agree.

In a majority of jurisdictions that have ruled on the question, it has been held that an educational degree or a professional license does not constitute marital property subject to division by the court in a marriage dissolution proceeding. See 24 Am.Jur.2d Divorce and Separation  898 (1983). Such items have no exchange or transferrable value. In re Marriage of Graham (Colo. 1978), 574 P.2d 75, 77. They are personal to the holder, terminate upon death, and are not subject to inheritance, assignment, sale, conveyance, or pledge. Graham, 574 P.2d at 77. They are intellectual achievements which may potentially assist in the future acquisition of property but possess none of the usual attributes of property. Graham, 574 P.2d at 77. See also 4 A.L.R. 4th 1294 (1981).

The District Court recognized that a spouse may have an equitable claim to repayment for any investment she may have made in the license holder's education or career enhancement to allow that license holder to attain his education and training. The record demonstrates that Shawn financed his own education with student loans included as liabilities in his distribution of the marital estate. Lisa did not put her career on hold or place her own advanced educational plans, if any, on hold for the sake of Shawn's advancement. According to the record, she was voluntarily unemployed during three of the four years that Shawn attended veterinary school. After Shawn's graduation, the parties lived primarily on Shawn's professional income for three years before moving to Hamilton. Between the years of 1984 and 1993, the parties reported nearly the same amount of income to the IRS. It does not appear that Lisa had difficulty finding appropriate self-sustaining employment since the parties' separation by using her premarital education and the work skills acquired during marriage. Under the facts of this case, the District Court did not abuse its discretion when it did not consider Shawn's veterinary degree as part of the marital estate.

Lisa suggests she should have been awarded rehabilitative maintenance pursuant to  40-4-203, MCA, so that she could establish herself at a professional level similar to Shawn's. This Court and other jurisdictions have considered the concept of rehabilitative maintenance. In Marriage of Williams, this Court affirmed a  ten-year $162,597 maintenance award to an attorney's wife based on the value of her lost career. In re Marriage of Williams (1986), 220 Mont. 232, 714 P.2d 548. Likewise, in Downs v. Downs (Vt. 1990), 574 A.2d 156,  the Vermont Supreme Court considered the case of a spouse who had contributed to the education and training of her husband, a physician, when there was insufficient property for distribution. The court held "when one spouse obtains a professional degree during the marriage, but the marriage ends before the benefits of the degree can be realized, the future value of the professional degree is a relevant factor to be considered in reaching a just and  equitable maintenance award." Downs, 574 A.2d at 159. See also Washburn v. Washburn (Wash. 1984), 677 P.2d 152; Reiss v. Reiss (N.J.Super.A.D. 1985), 500 A.2d 24.

We need not decide whether rehabilitative maintenance is receivable in situations where one spouse sacrifices an education or career to enable the other spouse to obtain

a professional degree, education, or license.  Even if this Court adopted that concept, the facts of this case would not justify such an award.  We hold that the District Court did not abuse its discretion when it did not provide Lisa with rehabilitative maintenance.

Lisa argues that she is entitled to maintenance and a property settlement because she was instrumental in preparing a business plan for the SBA loan.  The District Court correctly determined that there was insufficient evidence to conclude that the business plan was instrumental in securing the parties' SBA loan.  As the court found, it is more likely that, because the parties possessed no collateral and no net worth, the willingness of Shawn's parents to guarantee the loan carried more weight in the bank's decision than the business plan.

The District Court's findings in support of its maintenance award are not clearly erroneous.  We hold that the District Court did not err when it awarded Lisa $100 in annual maintenance for five years.

3.    Did the District Court err when it ordered returned an issued writ of execution?

Lisa claims that the District Court erred when it ordered the return of an issued writ of execution because Shawn did not properly object.  A question is moot when this Court can fashion no effective relief.  Turner v. Mountain Engineering and Const., Inc. (1996), 276 Mont. 55, 63, 915 P.2d 799, 804.  We have held under Issue 1 above that the District Court did not err when it modified its temporary maintenance order.  A determination of whether the court erred when it ordered returned the issued writ of execution will not grant Lisa effective relief.  We conclude that the issue is moot and do not address it further.

4.    Did the District Court err when it did not consider Shawn's failure to carry health insurance for Lisa?

Lisa claims that the court did not consider Shawn's failure to comply with its temporary order requiring him to provide her with health insurance.  Lisa provides no legal authority, as required by Rule 23, M.R.App.P., to explain how the court erred.  Therefore, we decline to further address this issue on appeal.

5.    Did the District Court err when it valued Shawn's veterinary practice?

Following a maintenance modification hearing held on July 11, 1995, the District Court found that Shawn's practice had a negative value.  Lisa argues that there is insufficient evidence in the record to support the court's finding.  Lisa did not file a complete transcript of the hearing as required by Rule 9(b), M.R.App.P.  As a result, we cannot review the sufficiency of the evidence on that issue.

The distribution of marital property in a dissolution proceeding is governed by 40-4-202, MCA.  Under this statute, a district court is vested with broad discretion to distribute the marital estate in a manner which is equitable to each party according to the circumstances of the case.  In re Marriage of Smith (1995), 270 Mont. 263, 267, 891 P.2d 522, 525.  The standard of review of a district court's division of marital property is whether the court's findings are clearly erroneous.  In re Marriage of Hogstad (1996), 275 Mont. 489, 496, 914 P.2d 584, 588.  If substantial credible evidence supports the district court's judgment, it will not be disturbed absent an abuse of discretion.  Hogstad, 914 P.2d at 588.

Lisa claims that when the District Court divided the marital estate, it did not consider the value of the clinic's good will.  The findings and conclusions indicate otherwise.  The District Court found that Shawn's professional practice is a marital asset eligible for equitable distribution.  It determined that the only recognizable value of a professional practice over and above the net value of its tangible physical assets is the present value of its good will, i.e. the extent to which the practitioner's net profits exceed that of the average practitioner in the region of the practice.  In re Marriage of Hull (1986), 219 Mont. 480, 712 P.2d 1317.  The value of the tangible assets of Shawn's practice is far more than fully secured by his SBA loan.

The court also found that through competition Shawn's potential market share has been eroded and that his practice has no good will to be distributed.  There is substantial credible evidence from Shawn's testimony and financial records to support the court's finding that the clinic has a "negative value."  Therefore, the court's finding is not clearly

erroneous. We conclude that the District Court did not abuse its discretion when it valued Shawn's veterinary practice.

6. Did the District Court err when it did not consider Lisa's contribution of premarital property and inherited funds?

Lisa argues that the court did not consider her premarital property when it divided the marital estate. The District Court found that neither party owned any significant assets at the time of their marriage. We conclude that the District Court did not abuse its discretion.

Lisa also argues that the court did not consider her inheritance in its division of the marital estate. Whether inherited property is a marital asset remains a question to be treated on a case-by-case basis. In re Marriage of Kimm (1993), 260 Mont. 479, 485, 861 P.2d 165, 169. The District Court found that, "No proof was presented to document Lisa's representations and the [c]ourt is unable to verify her claims as to the disposition of her inheritance." At trial, Lisa testified that she used her inheritance for living expenses when she was not working after 1987. The remainder was spent for a pickup truck and other personal property still in Lisa's possession. Lisa is not entitled to a credit in the division of the marital estate based on her inheritance. We hold that the District Court did not abuse its discretion when it did not include Lisa's inherited funds in the marital estate.

7. Did the District Court err when it refused to hear Lisa's testimony as an expert witness concerning the value of the clinic?

Lisa argues that the court abused its discretion when, at trial, it refused to hear her opinion concerning the value of the clinic because she was not qualified under Rule 702, M.R.Evid. The determination of the qualification of an expert witness is a matter of discretion for the trial court. Absent a showing of abuse of that discretion, the decision will not be disturbed. In re Marriage of Arrotta (1990), 244 Mont. 508, 511, 797 P.2d 940, 942.

After sustaining Shawn's objection regarding Lisa's proposed expert testimony, the District Court allowed Lisa to make an offer of proof. Lisa testified that the average annual gross income for veterinary practices in western Montana similar to Shawn's is $263,000. The issue of Lisa's proposed expert testimony is not determinative in this case. We conclude that the District Court did not abuse its discretion when it determined that Lisa was not qualified to testify as an expert witness.

8. Did the District Court err when it failed to award Lisa attorney fees?

Lisa argues that the court erred by requiring each party to bear their own legal expenses. She also argues that the court abused its discretion because she incurred substantial attorney fees attempting to enforce court-ordered temporary maintenance.

Section 40-4-110, MCA, grants a district court discretion to award attorney fees in a marriage dissolution action after considering the financial resources of both parties. In re Marriage of Walls (Mont. 1996), 925 P.2d 483, 487, 53 St.Rep. 974, 976. A district court's determination regarding attorney fees will not be disturbed absent an abuse of discretion. Walls, 925 P.2d at 487.

The District Court found that both parties incurred substantial legal fees and neither had the income or resources to pay their own fees, much less those of the other party. We hold that the District Court did not abuse its discretion when it did not award Lisa attorney fees.

We affirm the District Court's findings of fact, conclusions of law, final decree of dissolution, and other rulings issued during the action.

/S/ J. A. TURNAGE

We concur:

/S/ JAMES C. NELSON
/S/ JIM REGNIER

/S/  TERRY N. TRIEWEILER
/S/  W. WILLIAM LEAPHART