No. 96-591

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

IN RE THE MARRIAGE OF

CATHY LYNN KAYSER,

    Petitioner and Respondent,

and

TERRY NEAL KAYSER,

    Respondent and Appellant.



AUG 12 1997

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and for the County of Sanders,
The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        George T. Radovich, Attorney at Law, Billings, Montana

    For Respondent:

        Jean Adele Carter, Attorney at Law, Thompson Falls, Montana

Submitted on Briefs: May 29, 1997

Decided: August 12, 1997

Filed:

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

Cathy Kayser (Cathy) and Terry Kayser (Terry) were married for eighteen years, during which time they jointly owned and operated a business consisting of guided hunting operations in both western and eastern Montana and an outfitting and guide school (collectively "hunting guide business"). The Twentieth Judicial District Court, Sanders County, subsequently dissolved Cathy and Terry's marriage, provided for custody and support of their two minor children, and valued and distributed the marital estate. Terry appeals from the District Court's valuation and distribution of the marital estate. We affirm.

The issues on appeal are:

1. Did the District Court err in valuing the hunting guide business and marital home?

2. Did the District Court abuse its discretion in distributing the marital estate?

## STANDARD OF REVIEW

We review a district court's findings of fact regarding the valuation and division of marital property to determine whether they are clearly erroneous. In re Marriage of Walls (1996), 278 Mont. 413, 416, 925 P.2d 483, 485 (citations omitted). A district court may

2

accept any reasonable valuation supported by the record. Marriage of Walls, 925 P.2d at 485 (citation omitted). Further, a district court may assign any value to disputed marital property that is within the range of values presented into evidence. In re Marriage of Lopez (1992), 255 Mont. 238, 243, 841 P.2d 1122, 1125. The division of marital property must be equitable, rather than equal, and a district court's judgment in that regard will not be disturbed unless it constitutes an abuse of discretion. Marriage of Walls, 925 P.2d at 485 (citations omitted).

## DISCUSSION

The District Court found that Cathy and Terry's marital estate totaled $482,218.96. It valued the western Montana portion of the hunting guide business at $250,000, placed no value on either the outfitting and guide school or the eastern Montana portion of the hunting guide business and valued the marital home at $155,000. In distributing the marital estate, the District Court awarded Cathy the marital home, a one-half interest in the western Montana portion of the hunting guide business, a vehicle, her personal property, miscellaneous household furnishings and other assets totaling $274,950 after the home- and vehicle-related debt assigned to her were deducted. Terry received a one-half interest in the western Montana portion of the hunting guide business, his personal property, and miscellaneous equipment--including vehicles and livestock--relating to the hunting guide business. Terry's portion of the marital estate totaled $207,268.96 after deducting debt assigned to him.

1. Did the District Court err in valuing the hunting guide business and marital home?

## Hunting guide business

Terry argues that the District Court included the "absolute maximum value" of the hunting guide business without considering either his own testimony or that given by Cathy and Gloria Belcher (Belcher), a stockbroker, investment manager and local land owner. Terry further contends that testimony at trial indicated the maximum potential sales price for the hunting guide business was "closer to the $200,000 range" rather than the $250,000 figure the District Court used. The record, however, belies Terry's arguments. Moreover, his arguments ignore both the District Court's ability to accept any reasonable value supported by the record and this Court's clearly erroneous standard of review of a trial court's valuation findings. See Marriage of Walls, 925 P.2d at 485 (citations omitted).

Here, the record contains a range of values for the hunting guide business. Indeed, Terry testified that the western Montana operation, with permits, was worth "150 to $175,000" and, in addition, that he had received an offer for the hunting guide business, later withdrawn, for "between 300 and $350,000." Belcher, who testified as Cathy's expert, stated that "a modest evaluation" of the western Montana operation of the hunting guide business was $200,000 to $250,000, she was interested in purchasing the western Montana operation for "in the $200,000 range," and her purchase price "[did] not include [Terry's] equipment or the eastern part of Montana or his guide school." Cathy testified, based on her

involvement with the business, that the western portion of the hunting guide business was worth $250,000.

The District Court's finding that the western Montana portion of the hunting guide business was worth $250,000 is supported by the record, is well within the range of values presented in evidence and is not otherwise clearly erroneous. We hold, therefore, that the District Court did not err in this regard.

We observe that Terry also makes a passing argument relating to the District Court's valuation of the equipment associated with the hunting guide business. That equipment was valued at $82,268.96 and, as noted above, was awarded to Terry in the distribution of the marital estate. Terry does not contest the amount at which the court valued the equipment; rather, he contends that the court erred in valuing it separately from the hunting guide business. We discern no error in this regard, however, since Belcher's testimony clearly separated the equipment from her underlying valuation of the business. In addition, while the offer Terry received for the hunting guide business--in the $300,000 to $350,000 range-- may have included the equipment separately valued by the District Court, deducting the $82,268.96 equipment value from the high end of that range would leave a value for the business--without the equipment--higher than that ultimately used by the District Court. In short, Terry has established no error in the District Court's separate valuation of the equipment associated with the hunting guide business.

<u>Marital home</u>

Cathy admitted at trial that she had neither formal education in the real estate market nor experience in valuing real estate. Based on reading real estate listings in the area for properties comparable to the marital home, however, she testified that she believed the home was worth "between 100 and $125,000." Terry testified that he "checked around with some of the real estate people" and personally compared prices of residences in the area. According to Terry, a named real estate professional told Terry the property could be sold for $185,000; no written appraisal regarding the value of the marital home was introduced, however, and the "real estate professional" did not testify. As set forth above, the District Court valued the marital home at $155,000.

Terry apparently contends that his evidence was more credible than Cathy's "limited . . . general knowledge obtained over a series of years of reading real estate listings" as a matter of law and, as a result, his $185,000 value should have been accepted. We disagree.

The only evidence regarding the value of the marital home came from the parties themselves, neither of whom had any substantial knowledge or experience in the field of real estate and real estate values. Neither valuation was inherently more credible, and we have held that the district court has broad discretion in determining the value of property in a dissolution action, and " '[i]ts valuation can be premised on expert testimony, lay testimony, documentary evidence, or any combination thereof.' " In re Marriage of Robinson (1994), 269 Mont. 293, 296, 888 P.2d 895, 897 (citation omitted). Here, the District Court valued

6

the marital home at $155,000, within the range of values presented at trial. That finding is supported by substantial credible evidence and is not otherwise clearly erroneous. We hold, therefore, that the District Court did not err in valuing the marital home.

2. Did the District Court abuse its discretion in distributing the marital estate?

Terry argues that, even assuming the court's valuations are correct, as we held above, the District Court abused its discretion in distributing the marital estate because Cathy was awarded 57% of the estate, compared to the 43% he received. We disagree.

First and foremost, we reiterate that, in distributing the marital estate, a district court must make an equitable distribution, not necessarily an equal distribution. Marriage of Walls, 925 P.2d at 485 (citation omitted). Here, the 57% to 43% distribution is close to being equal. In addition, the distribution is based on the court's unchallenged finding that Terry's income is approximately two and one-half times greater than Cathy's income. Furthermore, the District Court's determination that Cathy is not entitled to maintenance was premised, in large part, on the distribution to her of property which will be sufficient to meet her reasonable needs.

Nor is Terry's reliance on In re Marriage of Popp (1983), 206 Mont. 415, 671 P.2d 24, in support of his argument that the distribution in this case is inequitable, well placed. There, the trial court expressly stated that it was making a 60% to 40% distribution; its findings did not effectuate such a distribution, however, in part because of errors in underlying valuations. Marriage of Popp, 671 P.2d at 26. In addition, we could not ascertain

7

the basis for the trial court's distribution in the husband's favor. Marriage of Popp, 671 P.2d at 27-28. As a result, we remanded for further consideration. Marriage of Popp, 671 P.2d at 28.

Marriage of Popp is inapplicable here. As discussed above, the District Court did not err in valuing the marital estate and the basis for its 57% to 43% distribution is clear on this record.

We conclude that the District Court did not abuse its discretion in distributing the marital estate.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

8