No. 02-019

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 281

IN RE THE MARRIAGE OF

PATRICK B. HAYES,

Petitioner and Respondent,

and

EILEEN A. HAYES,

Respondent and Appellant.

APPEAL FROM:   District Court of the Fourth Judicial District,
In and For the County of Missoula,
Honorable Douglas G. Harkin, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Dennis E. Lind and Cynthia L. Cate, Datsopoulos, MacDonald & Lind,
Missoula, Montana

For Respondent:

Shelly F. Brander, Kaufman, Vidal & Hileman, Kalispell, Montana

Submitted on Briefs:  May 23, 2002

Decided:  December 10, 2002

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 The Petitioner, Eileen Hayes, n/k/a Eileen Larkin, appeals from an Order issued by the District Court for the Fourth Judicial District in Missoula County which distributed the marital estate between her and the Respondent, Patrick Hayes. We affirm.

¶2 The following issues are presented on appeal:

1. Did the District Court err by not determining the net worth of the marital estate prior to its distribution?

2. Did the District Court err by not considering the tax consequences arising from the court-ordered sale of marital properties?

3. Did the District Court err by not including Patrick's disability income in the marital estate or by not considering the disability income in determining whether or not to award maintenance to Eileen?

## Factual and Procedural Background

¶ 3 Eileen and Patrick were married in Houston, Texas, on January 22, 1982, and have two children from the marriage. Both received their chiropractic degrees; however, Eileen practiced for only one year because of a knee injury. In 1984, the parties moved to Colorado and opened a chiropractic clinic where Patrick practiced as a chiropractor and Eileen handled the administrative responsibilities. The clinic flourished; in 1989 Patrick had 20,000 patient visits. Patrick and Eileen were equal shareholders in the clinic. In 1989, the parties acquired full ownership of the office complex in which the clinic was located.

2

¶ 4 The parties acquired various other assets, including an upscale home, an 80-acre ranch, a cabin, a motor home, and several vehicles. In addition, the couple purchased a deluxe tax-free disability insurance policy with all available future income options and riders to protect the parties' substantial income from the clinic should Patrick become disabled.

¶ 5 In 1990, after suffering unexplained weight loss, heartburn and fatigue, Patrick was diagnosed with Gastroesophageal Reflex Disease. Patrick discontinued working as a chiropractor at that time and began receiving private disability benefits. Patrick also applied for and was awarded workers' compensation benefits from the State of Colorado. Patrick's health continued to deteriorate. In 1992, Patrick was diagnosed with a terminal condition known as Scleroderma, a progressive vascular autoimmune disease which will shorten his life span. Although Patrick's anticipated life expectancy is unknown, one of Patrick's treating physicians testified that 80 percent of white males do not live ten years past their diagnosis date. Patrick underwent esophagus surgery and continues to receive periodic treatment related to the disease. Patrick currently receives approximately $12,000 per month in tax-free disability insurance benefits.

¶ 6 In 1990, Eileen and Patrick moved to Montana to further their education. Both Patrick and Eileen enrolled at the University of Montana and obtained their bachelor's degrees. Eileen is currently attending law school at the University of Montana where she will receive her juris doctorate in 2003. After they moved to Montana,

the parties purchased property on Reserve Street in Missoula and built a business complex known as the "Towne Court" for the purpose of relocating Eileen's quilting business. Eileen was responsible for managing and operating the store.

¶ 7 The couple separated in the fall of 1998. Patrick subsequently filed a Petition for Dissolution of Marriage with the Montana Fourth Judicial District Court on April 28, 1999. Following two unsuccessful settlement conferences, the parties proceeded to a bench trial in June 2001.

¶ 8 The District Court issued its Findings of Fact, Conclusions of Law, and Order on July 19, 2001. The District Court awarded Eileen her retirement account, personal stocks and bonds, and a 1996 Aerostar. The value of the assets awarded to Eileen total approximately $55,000. Eileen was also awarded the $500,000 life insurance policy on Patrick with a cash out value of $25,500. The District Court denied her request for maintenance.

¶ 9 The District Court awarded Patrick his retirement account, property on Lake Inez, a motor home, two vehicles, various recreational and sporting goods, and a bank account. The value of the assets awarded to Patrick total approximately $157,000. The District Court also awarded Patrick the entirety of his disability and social security benefits totaling approximately $13,500 per month.

¶ 10 To address the disproportionate distribution of the estate, the court ordered the immediate sale of various assets, including the Towne Court property, the office complex in Colorado, and

4

certain life insurance policies. The Order also provided that, in the event the parties could not agree on a reasonable sales price for the properties, the District Court would set a price which would be reduced 5 percent monthly until they sold. The court ordered that the net proceeds from the sale of these assets be placed into an account and applied against the marital estate's debts. According to the District Court's order, after the marital debts were satisfied, Eileen was to receive a $100,000 cash payment "as partial adjustment for the property distributed to Patrick." Eileen then would receive three-quarters of the remaining marital estate and Patrick would receive one-quarter.

¶ 11 Thereafter, Eileen filed a motion for clarification and to alter or amend the judgment in which she requested the following: temporary family support pending sale of the marital property; that Patrick continue to be responsible for the marital credit card debt; that the court set forth a procedure for the sale of the property; and that Patrick pay the taxes on the Towne Court. The District Court issued an order on September 6, 2001, in response to Eileen's motion, denying her request for temporary family support and addressing her other requests. ¶ 12 Subsequently, Eileen filed a timely notice of appeal with respect to the District Court's Findings of Fact, Conclusions of Law, and Order and its September 6, 2001, Order in response to her motion for clarification and to alter or amend judgment.

Discussion

**¶ 13** **The distribution of marital property in a dissolution proceeding is governed by §**

**40-4-202, MCA. Under this statute, a district court is vested with broad discretion to**

**distribute the marital estate in a manner which is equitable to both parties. *Marriage of***

***Lee* (1997), 282 Mont. 410, 421, 938 P.2d 650, 657. In dividing a marital estate, the**

**district court must reach an equitable distribution, not necessarily an equal**

**distribution. *Marriage of Wells* (1996), 278 Mont. 413, 416, 925 P.2d 483, 485. We**

**review a district court's division of marital property to determine whether the findings**

**on which it relied are clearly erroneous. *Marriage of DeBuff*, 2002 MT 159, ¶ 14, 310**

**Mont. 382, ¶ 14, 50 P.3d 1070, ¶14;** *Marriage of Engen,* 1998 MT 153, ¶ 26, 289 Mont.

299, ¶ 26, 961 P.2d 738, ¶ 26. If the findings are not clearly erroneous, we will affirm the

distribution of property unless the district court abused its discretion. *Marriage of Engen,* ¶

26. The standard for abuse of discretion in a dissolution proceeding is whether the trial court

acted arbitrarily without employment of conscientious judgment or exceeded the bounds of

reason resulting in substantial injustice. *Marriage of Engen*, ¶ 26.

Issue 1

**¶ 14** Did the District Court err by not determining the net worth of the marital estate?

¶ 15 Eileen argues that the District Court erred by not establishing the marital estate's net

worth thereby abusing its discretion. In support of her argument, Eileen cites *Marriage of*

*Dirnberger* (1989), 237 Mont. 398, 773 P.2d 330, in which we ruled that a district court's

failure to make a specific finding as to liabilities, thereby precluding a determination of net

worth, was an abuse of discretion. *Dirnberger*, 237 Mont. at 402, 773 P.2d at 332. We vacated the property division in that case and remanded it for a redetermination.

¶ 16    Patrick points out that several cases since *Dirnberger* have held that a specific finding of net worth is not mandatory if the findings as a whole are sufficient to determine the equitable nature of the division. In *Marriage of Harkin*, 2000 MT 105, 299 Mont. 298, 999 P.2d 969, we concluded that a district court did not abuse its discretion by not making a specific finding of fact regarding the total assets and liabilities of the marital estate, and that "a net valuation by the district court . . . is not always mandatory." *Harkin,* ¶ 31 (quoting *Marriage of Walls* (1996), 278 Mont. 413, 417, 925 P.2d 483, 485). In determining whether a finding of net worth is necessary, we have stated that "the test is whether the findings as a whole are sufficient to determine the net worth and to decide whether the distribution is equitable." *Harkin,* ¶ 31; *Walls,* 278 Mont. at 417, 925 P.2d at 485 (quoting *Marriage of Stephenson* (1989), 237 Mont. 157, 160, 772 P.2d 846, 848).

¶ 17    Applying the test mentioned above, this Court must first determine whether the findings as a whole are sufficient to determine the net worth of the marital estate. Naturally, until the marital properties ordered sold are sold, it is impossible to calculate the net value of the marital estate; however, the District Court's inability to calculate the exact net worth does not render its distribution of the marital estate inequitable. Except for the properties it ordered the parties to sell, the District Court made specific findings regarding the valuation of all the marital assets. Then, at trial, the parties agreed on the values of the properties ordered sold except for the family residence. The District Court stated in its findings that in

7

distributing the estate it had "estimated the net sums likely to be received upon the sale of marital estate," although it did not state what those estimations were. The District Court also ordered that if the parties were unable to agree on a reasonable sale price for any of the properties, the court would then set the sale price. We believe that these findings are sufficient to determine the net worth of the marital estate, given that the value of a portion of the estate is unknown and subject to the market's determination.

¶ 18   Next, we consider whether the marital estate was equitably distributed. In distributing the marital assets, the District Court considered the factors set forth in § 40-4-202(1), MCA. Under this statute, the District Court may consider, among other factors, the age, health, and opportunity of each spouse to acquire future capital assets and income. In the case at bar, a significant disparity exists in the parties' health and opportunity for future acquisition of capital assets and income. Patrick, who was 44 at the time the petition for dissolution was filed, has a terminal disease which substantially impairs the quality of his life and precludes him from performing any gainful activity. The assets awarded to him, along with the disability benefits to be discussed below, are his sole means to accumulate wealth and pay for medical treatment. Eileen, on the other hand, is due to graduate from law school in 2003 and will have the opportunity to earn income in the future.

¶ 19   These facts were properly considered by the District Court in its distribution of the estate. The District Court did not abuse its discretion in finding that the disparity in the parties' health and future income potential weigh in favor of Patrick receiving his share of the marital estate first in time, while his health is at its best, and Eileen receiving her share later

8

on, when the sales of the properties are concluded and the marital debts are satisfied. Although the District Court could not make a specific finding of the estate's net worth, the findings of fact taken as a whole are sufficient to determine that the property distribution was equitable. The District Court did not act arbitrarily nor did it fail to employ conscientious judgment in its division of the marital estate. Indeed, "the emphasis placed on the parties' needs and their relative financial situations indicates a careful exercise of the court's discretion." *Marriage of Stephenson* (1989), 237 Mont. 157, 160, 772 P.2d 846, 848 (quoting *Bailey v. Bailey* (1979), 184 Mont. 418, 420, 603 P.2d 259, 260). Accordingly, we hold the District Court did not err in failing to determine the net worth of the marital estate nor abuse its discretion in distributing the marital estate.

Issue 2

¶ 20    Did the District Court err by not considering the tax consequences which would result from the sale of property ordered by the District Court?

¶ 21    The District Court ordered Eileen and Patrick to sell various properties, including the Towne Court and office complex in Colorado, as well as the parties' residence. The District Court recognized in its findings that "[t]he sales expenses and tax consequences will diminish the marital assets, but the need to disengage the parties recommends no other alternative." While the District Court did not calculate the specific tax consequences to be realized from the sale, it stated that it had "estimated the net sums to be received upon the sale of the marital property."

¶ 22   Eileen argues that the court should have, but did not and could not estimate the tax consequences of the sale of those properties.  At trial, neither Eileen nor Patrick requested that the properties be sold, and thus did not present any evidence relating to the tax consequences of such a sale.  Eileen contends that by not considering the tax consequences of those sales, the District Court abused its discretion.

¶ 23   In support of her argument, Eileen cites *Marriage of Lee* (1991), 249 Mont. 516, 519-20, 816 P.2d 1076, 1078, where this Court held that a district court abused its discretion by failing to address tax consequences associated with the distribution of a marital estate.   In *Lee*, a district court directed one spouse to liquidate his personal stock to satisfy the court-ordered cash payment to the other spouse.   In reversing the lower court this Court stated "where a property distribution ordered by a court includes a taxable event precipitating a concrete and immediate tax liability, such tax liability should be considered by the court before entering its final judgment."  *Lee,* 249 Mont. at 519, 816 P.2d at 1078 (quoting *Marriage of Beck* (1981), 193 Mont. 166, 171, 631 P.2d 282, 285).

¶ 24   Patrick contends that *Lee* does not control in this case because the tax liabilities arising from the sale of the properties are to be paid from the marital estate prior to distribution and will not be borne by an individual spouse.  Patrick points out that in *Lee*, the tax consequences of the court-ordered sale directly reduced one spouse's share of the marital estate.  Here, the tax consequences will reduce both parties' portions of the estate.  Because the tax consequences of the court-ordered sale are to be borne by the marital estate and not an individual party, and because neither party offered evidence regarding those consequences,

10

we believe that the District Court did not err by not considering the specific tax implications of the sale.

## Issue 3

¶ 25 Did the District Court abuse its discretion by not including Patrick's disability income in the marital estate or by not considering the disability income in determining whether or not to award maintenance to Eileen?

¶ 26 While a court may consider the "opportunity of each for future acquisition of capital assets and income," under § 40-4-202, MCA, this does not mean that future income is necessarily a part of the marital estate to be divided between the parties. Eileen states that the disability insurance policy was part of the family's retirement planning and was acquired during the marriage with marital funds. Therefore, she maintains that the future benefits of the policy, which total $12,000 monthly, should have been included in the marital estate or considered in her request for maintenance. Patrick counters that the disability benefits simply replace future income he would have earned if he did not have Scleroderma. He further points out that the District Court correctly did not consider Eileen's future income as an attorney in its distribution of the marital estate. He also directs this Court to the District Court's findings "that the monthly income Patrick receives from his disability insurance policy was considered when determining the distribution of the marital estate." The District Court, having considered Patrick's disability benefits in its distribution of the marital estate, did not abuse its discretion in awarding the entirety of the benefits to Patrick.

11

¶ 27    As to whether the disability benefits were properly considered by the District Court for determining whether to award maintenance to Eileen, § 40-4-203, MCA, prescribes the circumstances under which maintenance can be awarded. A court can order maintenance for either spouse only if it finds that the spouse seeking maintenance "lacks sufficient property to provide for his reasonable needs," and "is unable to support himself through appropriate employment . . . ." Section 40-4-203, MCA. The District Court found that "[t]he property distribution made herein to Eileen provides her with sufficient property and funds to provide for her reasonable needs." In reviewing the court's findings, it is obvious that Eileen can provide for her reasonable needs and that maintenance is not necessary in this case. Therefore, we hold that the District Court did not abuse its discretion in awarding Patrick the entirety of the disability benefits.

¶ 28    Today's ruling underscores the principle that "[i]n dividing a marital estate, the district court must reach an equitable distribution, not necessarily an equal distribution." *Marriage of Wells* (1996), 278 Mont. 413, 416, 925 P.2d 483, 485. The fact that a spouse's quality and length of life and future income potential is drastically reduced must be considered by the court distributing the estate. We hold that given the facts of the case at bar, the District Court divided the marital estate in an equitable fashion. Accordingly, we affirm the District Court's distribution of the marital estate.

/S/ W. WILLIAM LEAPHART

12

We concur:

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER

Justice Patricia O. Cotter dissents.

¶3    I dissent from the Court's disposition of all three issues. I would conclude the District Court's findings were not sufficient to determine the net worth of the marital estate or to decide whether the distribution was equitable. Moreover, I would conclude the District Court abused its discretion when it failed to consider the tax consequences arising from the court-ordered sale of the marital properties, and failed to include Patrick's disability income in the marital estate or in the alternative, to consider the disability income in determining if maintenance would be awarded to Eileen. I would reverse and remand to the District Court for determination of an equitable apportionment of the marital estate, and for re-evaluation of the maintenance question.

¶4    Under § 40-4-202(1), MCA, in a proceeding for dissolution of marriage, a district court shall

> equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both. In making apportionment, the court shall consider the duration of the marriage and prior marriage of either party; the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; custodial provisions; whether the apportionment is in lieu of or in addition to maintenance; and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution or dissipation of value of the respective estates and the contribution of a spouse as a homemaker or to the family unit.

¶5    While we have previously held that a net valuation by the district court is not always mandatory in order for this Court to properly review marital distributions, a district court's findings

14

as a whole still must be sufficient to determine the net worth of the marital estate and to decide whether the estate was distributed equitably. *See*, *Harkin*, ¶ 31. I would conclude the District Court's Findings of Fact, Conclusions of Law and Order wholly failed to satisfy this requirement.

¶6 The District Court provided values for only a select group of marital assets, distributing them as set forth in ¶¶ 8-9 of the Majority Opinion. In addition, the court directed the parties to sell three specified properties (Rolling Green residence, Towne Court and Timeless Treasures Quilt Shop, and Woodland Park office complex), and ordered payment of several debts out of the gross sale proceeds. Of the remaining net balance, Eileen was to receive $100,000 as a partial adjustment for property distributed to Patrick. Finally, the court determined that 25 % of the remaining net proceeds would be awarded to Patrick and 75 % to Eileen.

¶7 The Court concludes that even though a portion of the estate's value is unknown (i.e., market values of the properties), the findings are sufficient to determine the net worth of the estate (See ¶ 17). I disagree. The District Court failed not only to assign an estimated market value to each property, but also failed to provide values for the debts it ordered paid from the gross proceeds. The Court notes that at trial the parties agreed on the values of the properties ordered sold (See ¶ 17); however, the District Court failed to include those values in its findings. Moreover, the record reflects the parties did not agree on the value of the Rolling Green residence. Given these deficiencies in the District Court's order, it is impossible for anyone to approximate what Eileen's portion of the marital estate will be.

15

Moreover, it is also uncertain whether there would even be sufficient net proceeds to cover the $100,000 due Eileen--which constitutes her adjustment for property distributed to Patrick--let alone what would be left for the 25-75 distribution of the remaining balance.

¶8    The District Court's findings also fail to clarify the value of various life insurance policies that it ordered cashed out or put towards the proceeds of the properties' sale.    There was disputed testimony as to the actual value of the $500,000 policy that was awarded to Eileen.    While the policy apparently had a cash surrender value of $25,500, the District Court's findings failed to take into account the undisputed fact that the policy was encumbered by a loan, and that to secure the policy, Eileen would have to pay $9,000 in interest, or approximately $750 per month. Moreover, the court also ordered Eileen's $500,000 life insurance policy cashed out or canceled, but failed to include a cash-out value for the policy.    Finally, the court ordered the parties to either cancel or cash out the two remaining insurance policies and directed any proceeds to be applied towards the income from the properties' sale.    However, in its findings, the court indicated a cash value for only one of these policies.

¶9    We do know that the court awarded Patrick all of the disability benefits, which amounted to approximately $12,000 a month, with an estimated increase of $500 per month every year. Patrick also received approximately $1200 per month in social security benefits.    Therefore, if Patrick lives 10 more years, to age 56 (the District Court estimated his life span to be between 50 and 60), this amounts to roughly $2 million, tax free.    Given the

16

significant value of this award to Patrick, the court's failure to ascertain the real property values, debt and tax consequences, or potential proceeds from cashed-out insurance policies becomes even more troubling for Eileen, as it is the properties' ultimate net value which will determine what Eileen receives from the marital estate.

¶10 The Court notes that neither party presented evidence concerning the tax consequences attributable to the sales. However, neither party anticipated the District Court would order the sale of the properties, with the exception of perhaps the Woodland Park complex, and thus neither sought to introduce evidence of potential tax liabilities. Eileen sought an opportunity to present evidence of the tax consequences in her motion for clarification following the court's Findings of Fact, Conclusions of Law and Order; however, the court failed to conduct a hearing on the matter. In remanding this matter to the District Court, I would instruct the court to consider the tax consequences associated with selling the properties and to reflect those liabilities in the net marital estate, in accordance with our holding in *Marriage of Lee*. *See*, *Lee*, 249 Mont. at 519-20, 816 P.2d at 1078 (citation omitted) ("[W]here a property distribution ordered by a court includes a taxable event precipitating a concrete and immediate tax liability, such tax liability should be considered by the court before entering its final judgment.").

¶11 Finally, because I would conclude the District Court failed to adequately determine the value of the marital estate and hence had no adequate basis upon which to distribute it, I must dissent from the Court's disposition of Issue Three. The District Court's finding that the property distribution provides Eileen with sufficient property and funds to meet her

17

needs, with which this Court agrees at ¶ 27 of its Opinion, is wholly unsupported by the Findings of Fact and Conclusions of Law. There is simply no underpinning to support the Court's conclusion that the District Court did not err in failing to include Patrick's significant disability income either in the marital estate, or in a determination as to the propriety of maintenance. As a consequence of the inadequacy of the court's Findings and Conclusions, there is no way to assess whether Eileen will end up with *any* property or funds, much less whether they will be significant enough to meet her needs.

¶12    I would therefore remand this matter to the District Court for determination of equitable apportionment of the marital estate, taking into consideration the value of the three properties ordered sold, and the amount of debt associated with the properties, including tax consequences from the court-ordered sale. I would further direct the court to reassess the value of the insurance policies, taking into account all encumbrances and limitations on their value. Finally, once these matters are determined, I would then direct the court to address and resolve Issue 3, based upon an informed valuation of the marital estate. I dissent from our refusal to do so

/S/ PATRICIA COTTER


Justice Jim Rice joins in the foregoing dissent.

/S/ JIM RICE


18